WILLIAM MAYER, AN INFANT, BY HIS GUARDIAN *AD LITEM*, JAMES MAYER, AND JAMES MAYER, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. HOUSING AUTHORITY OF THE CITY OF JERSEY CITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued March 2, 1965—Decided June 1, 1965.

*Mr. Robert E. Tarleton* argued the cause for appellant (*Messrs. Beggans and Keale,* attorneys).

*Mrs. Janet W. Freeman* argued the cause for respondents (*Mr. Fred Freeman,* attorney).

PER CURIAM. The judgment is affirmed for the reasons expressed in the opinion of Judge Labrecque in the Appellate Division.

WEINTRAUB, C. J., concurs in result.

HANEMAN, J. (dissenting). The facts with which we are here concerned are generally adequately recited in the Appellate Division opinion, 84 *N. J. Super.* 411 (*App. Div.* 1964). The thesis of plaintiff's case is that he was hit by a stone thrown by some unknown person (presumably another child) while enjoying the playground facilities provided by the defendant; that the throwing of the stone and the contact of that missile with plaintiff was a foreseeable incident; and that it was defendant's duty to furnish sufficient supervisory personnel at the playground to prevent such an accident. The foundation of plaintiff's case is proof that the injury was caused by such a thrown stone, as only upon an affirmative determination of that postulate can the question of defendant's liability arise.

Neither plaintiff nor any of the other nine boys playing baseball with him, nor any of the numerous spectators, saw how plaintiff was injured. Aside from testimony by one of plaintiff's playmates that after plaintiff was struck, and bleeding profusely, he noticed a stone on the ground near where plaintiff had been standing, "with blood on it," plaintiff relies entirely upon testimony of stonethrowing antedating this accident as proof that it must have been a thrown stone which struck him in the eye. The testimony that children threw stones on prior occasions ran the gamut of from two or three times a year to once or twice a week. The de-

scription of the stones thus allegedly thrown varied from pebbles to the size of golf balls. There was no evidence of stone-throwing in the vicinity of the ballfield on the day in question. The only evidence on this particular point is that one of the participants in the baseball game had seen two nine-year-old boys throwing stones about an hour before plaintiff's accident in a section some 350 feet away from, and not facing, the playing field in question. The manager of the housing project testified that there had been no complaints about stone-throwing nor any reports of accidents therefrom.

Proceeding from the hypothesis that the accident did occur as plaintiff alleges, the defendant can be liable only if it had a duty to this particular plaintiff to provide supervisory personnel adequate to prevent the tortious intervening infant behaviorism, and if it breached such a duty. Only after the imposition of such a duty is the question of negligence, *i. e.*, the breach of that duty, reached. I conceive that no such duty should be imposed.

Although the Appellate Division opinion adverts to the fact that:

"Initially, it is to be noted that the area in question is one over which the landlord retained control. It was designed for the use to which it was being put at the time of the happening of the accident. The rule is well settled that a landlord owes to tenants and their children a duty of reasonable care as to such portions of the premises." 84 *N. J. Super.*, at *p.* 417,

it in reality does not bottom its conclusion on traditional rules which govern tortious liability arising from the landlord-tenant relationship, *e. g.*, *Doud v. Housing Authority of City of Newark*, 75 *N. J. Super*. 340, 344 (*App. Div.* 1962), but upon the more flexible thesis of a generalized standard of negligence applicable to all landowners, based upon care commensurate with the reasonably foreseeable danger, 84 *N. J. Super.*, at *pp.* 417–418. The Appellate Division, in effect, follows that line of cases which has imposed a general duty on the owner or occupier of land to use reasonable care under the circumstances of the case. Thus, when the presence of

the child upon the land should have been anticipated, whether that child is a trespasser, licensee or invitee, a duty arises to protect that child from *dangerous conditions existing on the land*. The basis of liability is the foreseeability of harm; and the measure of duty is care in proportion to the foreseeable risk, regardless of the relationship of the landowner defendant to the infant plaintiff. As stated in the leading case of *Strang v. South Jersey Broadcasting Co.*, 9 *N. J.* 38, 45–46 (1952) : "The particular relation gives rise to a legal duty commensurate with the demands of reasonable foresight for harm." See *Simmel v. N. J. Coop Co.*, 28 *N. J.* 1, 9 (1958) ; *Wytupeck v. City of Camden*, 25 *N. J.* 450, 464 (1957) ; *Imre v. Riegel Paper Corp.*, 24 *N. J.* 438, 444–445 (1957) ; *Healing v. Security Steel Equipment Corp.*, 51 *N. J. Super.* 123, 132–133 (*App. Div.* 1958). Thus, the decision herein cannot be limited to its facts, but the proposition of law now announced is as applicable to a private or public landowner as to a housing authority, as is the scope of the duty imposed.

Such a duty is defined in *Wytupeck v. City of Camden, supra*, 25 *N. J.*, at *pp.* 461–462, as follows:

" 'Duty' is not an abstract conception; and the standard of conduct is not an absolute. Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm, such as is reasonably foreseeable, *Lokar v. Church of the Sacred Heart*, 24 *N. J.* 549, (1957). In the field of negligence, duty signifies conformance 'to the legal standard of reasonable conduct in the light of the apparent risk'; the essential question is whether 'the plaintiff's interests are entitled to legal protection against the defendant's conduct.' *Prosser on Torts* (*2d ed.*), *section* 36. Duty is largely grounded in the natural responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

'Duty' is not a rigid formalism according to the standards of a simpler society, immune to the equally compelling needs of the present order; duty must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows; and accordingly the standard of conduct is care commensurate with the reasonably

foreseeable danger, such as would be reasonable in the light of the recognizable risk, for negligence is essentially 'a matter of risk * * * that is to say of recognizable danger of injury.' *Prosser, Ibid., section* 30."

See also *Kahalili v. Rosecliff Realty, Inc.,* 26 *N. J.* 595, 603 (1958) ; *Johnson v. Kolibas,* 75 *N. J. Super.* 56, 65 (*App. Div.* 1962) ; *McKinley v. Slenderella Systems of Camden, N. J., Inc.,* 63 *N. J. Super.* 571, 581 (*App. Div.* 1960).

An integral element to be considered on the question of the existence of a duty is the factual determination whether there exists a reasonably foreseeable danger against which the defendant should protect the plaintiff. The test has been said to be whether the reasonably prudent person would recognize and foresee an unreasonable risk or likelihood of harm or danger to others. *McCabe v. N. J. Turnpike Auth.,* 35 *N. J.* 26, 35 (1961) ; *Rappaport v. Nichols,* 31 *N. J.* 188, 201 (1959). The negligence may consist in the creation of a situation which involves unreasonable risk because of the expectable action of another. *Rappaport v. Nichols, supra,* 31 *N. J.,* at *p.* 201.

There can be no doubt that it is foreseeable that children of tender years will indiscriminately throw stones, not necessarily in a combative spirit or at a human target, but for the mere joy of releasing their pent-up energy and testing their physical prowess. Nor can their propensity to throw snowballs in the winter time, or to engage in fisticuffs at any time, pass unrecognized. Space does not permit the further cataloguing of their many other natural proclivities which might result in injury to some third person. A list would reach tremendous proportions. Only a vivid imagination could abstractly and in advance recite the many activities which stimulate, and which are stimulated by, their curiosity and animal vitality. All manner of accidents and injuries occasioned by normal youthful conduct are foreseeable whether on the playing field, at public parks, on the highways and by-ways, or on private property. This proposition was most aptly expressed by Judge Jayne in *Diglio v. Jersey Central Power*

& *Light Co.*, 39 *N. J. Super.* 140, 141 (*App. Div.* 1956), when he stated:

> "Although the modern inclinations of teenagers and adults have become somewhat unpredictable, the natural propensities of children of tender years continue to be reasonably foreseeable. Their instincts have been too repeatedly observed over the ages to elude common knowledge. Their responsiveness to allurement has existed before the day of the Trojan horse; their proclivity to climb is old enough to have been a contributive factor to the conception of the Darwinian theory; and, as Lord Sumner put it, they are little barbarians who in the wantonness of infancy are prone to trespass."

And in *Wytupeck v. City of Camden, supra*, 25 *N. J.*, at *p.* 464, the Court said: "Children have an innate urge to climb, and to explore and to achieve." See also *Simmel v. N. J. Coop Co., supra*, 28 *N. J.*, at *p.* 7.

Thus, it must be admitted that wherever children gather it may be reasonably anticipated that they will throw stones, and this without proof of actual prior occurrences of a similar type at the site of the accident. The Appellate Division recognized such a probability when it stated:

> "While we do not hold that, as a prerequisite to recovery, plaintiffs were required to establish that stone-throwing took place during the daylight hours, we note that there was evidence to this effect." 84 *N. J. Super.*, at *p.* 424

*A fortiori* it is foreseeable that someone may, at some time, be injured by such activity, natural though it may be. Implicit in the above statement is the conclusion that no proof of particular prior occurrences was necessary to alert defendant to the foreseeable danger that wherever children gather, in large or small groups, stone-throwing may be reasonably anticipated, that defendant should have guarded against such conduct at its playground, and that the only way to effectively guard against such an occurrence would have been to provide supervisory personnel.

But the Appellate Division apparently failed to consider that the "foreseeability" of conduct of infants, in this sense,

should not of necessity generate a duty to protect against the risks created as a result thereof. This is especially true where, as here, plaintiffs injury was occasioned by an intervening, rather than a direct, cause of defendant's alleged breach of duty, *i. e.*, its failure to provide supervisory personnel. The defendant should not be liable unless its conduct has created or increased an unreasonable risk of harm from the intervening cause. *Prosser on Torts, supra,* § 49, *p.* 266 *et seq.* It has been stated that "the degree of care demanded of a person by an occasion is the resultant of three factors: the likelihood that his conduct will injure others [*i. e.*, foreseeability], taken with the seriousness of the injury if it happens, and balanced against the interest which he must sacrifice to avoid the risk." *Conway v. O'Brien,* 111 *F. 2d* 611, 612 (2 *Cir.* 1940), reversed on other grounds 312 *U. S.* 492 (1940.). See 2 *Harper and James, The Law of Torts* § 16.9 (1956). *Cf.* 2 *Restatement, Torts,* § 291 (1934).

(a) The key to the solution of the inquiry as to foreseeability is not what actually happened, but what a reasonably prudent person would have foreseen as likely to happen. The test is not retrospective but prospective: "After the event even a fool is wise. But it is not the hindsight of a fool; it is the foresight of the reasonable man which alone can determine responsibility." Green, "Foreseeability in Negligence Law," 61 *Colum. L. Rev.* 1401, 1417 (1961).

(b) The amount of caution required is governed in part at least by the seriousness of the harm which may be foreseen. The threatened harm may be so great as to require great caution, or "so slight as to preclude negligence." 2 *Harper and James, supra,* § 16.9, *p.* 931. Yet every human activity involves some risk of harm, be it ever so inconsequential or remote, and it is therefore the reasonable probability of an accident of other than minor proportions, not its remote possibility, which should give rise to a duty.

(c) In evaluating what interest must be sacrificed to avoid the risk there must be placed on the scales the value to society of the particular activity out of which the alleged

negligent act or omission arose. Dangerous conduct may be reasonable if it is useful enough and effective precautions are disproportionately burdensome in terms of inconvenience. 2 *Harper and James, supra*, § 16.9, *p*. 935. Thus, in *Genovay v. Fox*, 50 *N. J. Super*. 538, 551–552 (*App. Div.* 1958), reversed on other grounds 29 *N. J.* 436 (1959), the court stated a similar conclusion in a different factual complex:

> "The inconvenience and expense of such precautions, together with the accompanying impediment to the necessary untrammeled access to the premises by customers, so far outweighs the probability of bodily harm to a business invitee from an armed robber as to make it unreasonable, in our judgment, to put the proprietor to the trouble, expense and business inconvenience of effective measures to keep the criminal out."

In the case *sub judice* the very absence of proof of any prior minor, let alone severe, injury from stone-throwing serves to demonstrate that an ordinary man, even knowing of such infant activity, would not reasonably anticipate the likelihood of the grave accident which here occurred. Such remoteness of possible serious injury weighed against the benefits received from the availability of playground facilities, and the probable expense of employing supervisors in sufficient numbers to prevent any such accident as here occurred, demonstrates the disproportionate burden which in the final analysis would have to be borne by the tenants of this low-cost housing development. Furthermore, in light of the recognizable natural propensities of children, it cannot be said that defendant's establishment of a playground and its failure to furnish guards either created or increased the risk that the children of the housing complex using the playground would throw stones—the basic risk relied upon by plaintiff to give rise to a duty. The risk of children's throwing stones is ever present, whether the children live in a low-cost housing development with a playground, or whether they reside in one family homes and play on the streets, vacant lots and neighboring property.

A fair conclusion, as I read the opinion of the Appellate Division, is that a landowner is now liable not only for the condition of his land and the instrumentalities which he employs or leaves thereon, see authorities cited *supra, p. 3,* but as well for the tortious acts of all infant third parties also enjoying the said lands with his knowledge, whether as trespassers, licensees or invitees. This liability appends, whether the owner be a private individual or a public body, unless such owner takes protective measures to prevent any such natural and instinctive acts of children as have the potential of causing injury. To give rise to a duty under such circumstances would oblige landowners to protect children against the normal dangers of ordinary living. In imposing such liability have we not completed full circle the landowners' liability to infants which was rejected in *Diglio v. Jersey Central Power & Light Co., supra,* 39 *N. J. Super.,* at *p.* 145? It seems to me that "foreseeability" has been herein construed so as to make it a convenient vehicle for the extension of the liability without fault doctrine. With such an extension of liability I cannot concur.

The very vagueness and uncertainty of such a test as the basis for imposing a duty mitigates against its adoption under our still existing tort doctrine basing liability upon fault. While agreeing that *Goldberg v. Housing Auth. of City of Newark,* 38 *N. J.* 578 (1962), is not determinative under the facts herein, it is at least persuasive, especially on the policy arguments against the imposition of such a duty. The Court therein stated (38 *N. J.,* at *pp.* 589–591):

"The second consideration is the inevitable vagueness of the proposed duty. Fairness ordinarily requires that a man be able to ascertain in advance of a jury's verdict whether the duty is his and whether he has performed it. * * *

Not only would there be uncertainty as to *when* the duty to furnish police protection arises and as to *what* measures will discharge the duty, there would also be exceptional uncertainty with respect to the issue of causation. This is so because of the extraordinary speculation inherent in the subject of deterrence of men bent upon criminal ventures. It would be quite a guessing game to determine whether some unknown thug of unknowable character and mentality would

have been deterred if the owner had furnished some or some additional policemen. It must be remembered that police protection does not, and cannot, provide assurance against all criminal attacks, and so the topic presupposes that inevitably crimes will be committed notwithstanding the sufficiency of the force. Hence the question of proximate cause is bound to be of exceptional difficulty."

This reasoning, related to the facts *sub judice*, is equally applicable to the manifold ingenuity of infant behaviorism.

Similarly as to the question of proximate cause, "in itself an unfortunate term." *Prosser on Torts, supra,* § 44, *p.* 218. While the question of proximate cause is generally one for the jury, *Rappaport v. Nichols, supra,* 31 *N. J.,* at *p.* 203; *Bacak v. Hogya,* 4 *N. J.* 417, 424 (1950), it is a question of law on appeal whether there was sufficient evidence to sustain the jury's determination that the defendant's failure to provide playground supervisors was the proximate cause of plaintiff's injury.

In *Kulas v. Public Service Elec. and Gas Co.,* 41 *N. J.* 311 (1964), this Court said, at *page* 317:

"In order for a plaintiff to prevail, in addition to showing that the defendant was negligent, he must prove that the defendant's negligence was a proximate cause of his loss. In determining the existence of proximate cause, we must first inquire whether defendant's conduct constituted a cause in fact of plaintiffs' loss. *Harper & James, op. cit. supra,* § 20.2 at *p.* 1110. '[A]n act or an omission is not regarded as a cause of an event if the particular event would have occurred without it.' *Prosser, Torts,* § 44, *p.* 219, 220 (1955). And as stated by Professor Beale:

'[I]f the result would have happened just as it did whether the alleged actor had done his duty or not the failure to perform the duty was not a factor in the result, or, in other words, did not cause it.' Citing *Sowles v. Moore,* 65 *Vt.* 322, 26 *A.* 629, 21 *L. R. A.* 723 (*Sup. Ct.* 1893) ; *Ford v. Trident Fisheries,* 232 *Mass.* 400, 122 *N. E.* 389 (*Sup. Jud. Ct.* 1919) ; *Piqua v. Morris,* 98 *Ohio St.* 42, 120 *N. E.* 300, 7 *A. L. R.* 129 (*Sup.* [*Jud.*] *Ct.* 1918) ; *Montgomery Light & Water Power Co. v. Charles, D. C.,* 258 *F.* 723 (*D. Ala.* 1919). 'The Proximate Consequences of an Act,' 33 *Harv. L. Rev.* 632, 637, 638 (1920).

A similar test for causation in fact is set forth in § 432(1) of the *Restatement, Torts* (1934) as follows: '* * * [T]he actor's negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been negli-

gent.' See also the illustrations following the section. Our courts have recognized the above principles. *Monaco v. Comfort Bus Line, Inc.*, 134 *N. J. L.* 553 (*E. & A.* 1946) ; *Beyer v. White*, 22 *N. J. Super.* 137 (*App. Div.* 1952) ; *Lutz v. Westwood Transportation Co.*, 31 *N. J. Super.* 285 (*App. Div.* 1954)."

See also *Rappaport v. Nichols, supra*, 31 *N. J.*, at *p.* 203; *Prosser on Torts, supra*, § 44, *pp.* 219, 221.

The proximate cause here alleged is the failure to provide a sufficient number of guards to have prevented children from throwing stones. There is no basis on the record for a conclusion that the failure to furnish one or more guards at a playground of the size here involved was a substantial factor in bringing about plaintiff's injury; nor was there any evidence as to how many supervisors would be required to protect against such an incident; nor was the jury given a yardstick against which to determine the above. Common knowledge, so called, upon which the jury would have to rely to solve such questions, is nothing more than speculation. The resolution of that problem is not even remotely removed from factually unsupportable surmise. It cannot, on the record before us, reasonably be said that the failure to furnish guards was an omission without which the accident would not have happened or that the likelihood thereof would have been substantially reduced.

Nor are the cases cited by the Appellate Division in support of its expansion of liability determinative. None go so far as does this Court in the instant case toward making the landowner strictly liable for acts of third parties on his land, as distinguished from liability for an injury caused by dangerous conditions existing on that land.

Thus, in *Wytupeck v. City of Camden, supra*, 25 *N. J.* 450, liability was imposed for injuries to an infant trespasser who climbed an eight-foot fence and came into contact with an uninsulated electric wire. In *Da Rocha v. New York City Housing Authority*, 109 *N. Y. S.* 2d 263 (*Sup. Ct.* 1951), affirmed 282 *App. Div.* 728, 122 *N. Y. S.* 2d 397 (*Ct. App.* 1953), liability was imposed on the Housing Authority for

injuries sustained by a child hit by a bicycle ridden by another child, not directly because of lack of supervision, but because the defendant set in motion an attraction for children (a water spray shower on a hot day) in an area much too small to accommodate the gathering throng of children, and failed to protect those children from bicycle riders it knew used the walks in violation of its rules. The court stated (109 *N. Y. S. 2d*, at *p.* 265):

> "It may be, as urged by the defendant, that there was no duty to supervise play areas, but when this special play area was provided, of a size that would barely accommodate the crowd that came, and it was on the very roadway upon which bicycle riders would naturally go, the duty to guard adequately against known dangers to children of tender age certainly arose when the defendant itself gratuitously created the situation by turning on the water, and encouraging this special crowd at that localized area."

In *Geigel v. New York City Housing Authority*, 225 *N. Y. S.* 2d 891 (*Sup. Ct.* 1962), affirmed 17 *A. D. 2d* 838, 233 *N. Y. S. 2d* 257 (*Ct. App.* 1962), the defendant had ample notice that children were using the area near the pedestrian walks as a play area. Liability was imposed against the Housing Authority and in favor of an infant pedestrian who was injured by a child thus playing, on the ground that the existence of painted bases constituted an implied invitation to play ball at this inappropriate and unsuitable location. And, finally, in *Hansen v. New York City Housing Authority*, 271 *App. Div.* 986, 68 *N. Y. S. 2d* 71 (*App. Div.* 1947), the infant plaintiff was struck in the eye by the corner of a swing in a playground owned and operated by the defendant. The court left open the question whether defendant had a duty to supervise the playground, but found a triable question of fact with respect to the physical conditions of the playground (*i. e.*, improper construction of the swing area).

Thus, the imposition of a specific duty to provide playground supervision for informal athletic activities is without direct legal precedent, and raises some fascinating questions as to a defendant's ability to anticipate an accident such as

the infant plaintiff herein sustained. For example: Is defendant's alleged duty to furnish supervisors dependent upon notice of prior injury? Does the duty depend upon the number of children who have access to or who utilize the playground? Where, as here, the apartment complex houses approximately 1,300 children, some of whom, together with other children in the neighborhood, patronize the playground, what standard should be employed in determining the number of guards required and the days and hours when they should be in attendance? If supervisors have been supplied and an accident occurs, is that *prima facie* evidence that the protection was inadequate? During what hours of the day, for how many days a week, during how many weeks in the year, is it necessary to furnish guards? In answering the latter query, is it not "foreseeable" that children would frequent the playground seven days a week, at least during vacations, and not only during daylight hours but after dark as well? In short, how is the defendant apprised of the extent of its alleged duty, and what must it do to avoid liability? In *Goldberg* we are told that (38 *N. J.*, at *p*. 583):

"* * * Whether a *duty* exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution."

It seems to me that neither public policy nor fairness requires the vague type of duty here imposed, but rather dictate the opposite conclusion.

Piercing the theoretical terms of "foreseeability," "duty" and "proximate cause" in which the Appellate Division's conclusion is couched, reveals that the real *ratio decidendi* is strict liability, which in turn is bottomed in large part upon the doctrine that among parties involved in an accident, the party best able to bear or distribute the loss should be liable. This risk-bearing, risk-distributing doctrine is predicated upon radically different concepts from the fault theory. The availability of insurance is one beam which undergirds this thesis; yet recent developments in the insurance field have

demonstrated that this edifice may well be constructed on sand. It is common knowledge that in recent years public liability insurance has become more difficult to obtain. If obtainable, premiums have in many instances become so costly as to be almost prohibitive. Also, the expense incident to improvements and repairs to buildings and lands required by the prospective insurer as a condition to the issuance of a policy has placed coverage beyond the financial reach of many owners. It follows that in those circumstances where insurance is, for practical purposes, unavailable the risk is not distributed. Surely tenants in a low-cost housing project cannot be categorized as having "deep pockets," nor can the distribution of risk philosophy apply to them. It is no answer to say that a landowner should have the financial ability to obtain insurance. The same applies to many, if not most, landowners who will be affected by this decision.

Furthermore, despite the availability of insurance, the ultimate expense of providing the supervisory personnel hereinafter required of all apartments and public bodies furnishing recreational facilities must rest upon the tenants of the apartment regime and the taxpayer. Only in the latter case can there be a true distribution of risk. And even in that case, might not the effect of this decision result in the deprivation of recreational facilities for children to the extent that such bodies are unable or unwilling to voluntarily assume the duty of supervision hereinafter imposed upon them by law?

I would therefore reverse.

Justice HALL joins in this dissent.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For reversal*—Justices HALL and HANEMAN—2.