619 A.2d 575

EMILY BLIGEN, PLAINTIFF–RESPONDENT, v. JERSEY CITY
HOUSING AUTHORITY, DEFENDANT–APPELLANT, AND
ROBERT BLOUNT, MR. MINISTRAL, JOHN DOE, RICHARD
ROE, ABC CORP., AND XYZ CORP., ETC., DEFENDANTS.

Argued September 15, 1992—Decided January 27, 1993.

*Jeffrey L. Shanaberger* argued the cause for appellant (*Hill Wallack,* attorneys).

*Donna Lee Mantel* argued the cause for respondent (*Stern, Steiger, Croland, Tanenbaum & Schielke*, attorneys; *Donna Lee Mantel* and *Judith DeRosa*, on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

In this appeal we consider whether defendant, Jersey City Housing Authority ("JCHA"), is immune from liability for negligent snow removal under either the weather-immunity provision of the New Jersey Tort Claims Act, *N.J.S.A.* 59:4–7, or the common-law immunity for public entities snow-removal activities. Both courts below found that the weather-immunity provision did not exempt JCHA from liability. However, the trial court held that plaintiff could not prevail because JCHA enjoys common-law immunity for its snow-removal activities. The Appellate Division, however, rejected the conclusion that the common-law immunity for snow-removal activities extended to JCHA. 249 *N.J.Super.* 440, 443, 592 *A.*2d 623 (1991). We granted JCHA's petition for certification, 127 *N.J.* 533, 606 *A.*2d 353 (1991), and now affirm the Appellate Division.

I

Because this case arises on JCHA's motion for summary judgment, we accept as true the facts presented by plaintiff and give plaintiff the benefit of all inferences favorable to her claim. *R.* 4:46–2; *Pico v. State*, 116 *N.J.* 55, 57, 560 *A.*2d 1193 (1989). Emily Bligen, the plaintiff, lived in the A. Harry Moore Housing Complex owned by JCHA. The 7.62 acre complex has six apartment buildings and a recreation area. An entrance located at the east end provides access to an internal driveway. The semi-circular driveway, which leads out to Duncan Avenue, varies in width from eighteen to twenty-one feet and crosses the outer edge of the property. Parking spaces are perpendicular to the length of the driveway, and walkways lead from the parking spaces to the apartment buildings.

Plaintiff was on her way to meet a friend when she slipped and fell on ice in the driveway outside of her apartment building. The accident occurred on a Sunday evening in January. According to plaintiff, no snow had been cleared during the weekend, although there had been a snowstorm the previous Friday. The path she took from the sidewalk outside of her building to the parking area contained compacted snow formed by pedestrians who had ventured out during the weekend. Ms. Bligen herself had not been out of her apartment during the weekend because of the snow. As she was stepping off the curb into the parking area to meet her friend's waiting car, she slipped and fell, severely fracturing her wrist.

The resident-manager of the complex stated in his deposition that the apartment complex employed seventeen maintenance workers and that "whenever it snows the entire seventeen men are assigned to removing the snow." He further stated that the complex had priority for city plows, and had its own equipment, including sand, salt, and shovels to clear snow and ice. The maintenance staff inspected the premises daily.

Plaintiff filed a complaint against JCHA seeking damages for the injuries she had sustained from her slip and fall. JCHA, claiming that it was immune from suit as a public entity both under *N.J.S.A.* § 59:4–7 and the common law, moved for summary judgment. The Law Division found that the weather immunity did not apply but that common-law immunity did. The Appellate Division agreed that the weather immunity did not apply but reversed the Law Division's grant of JCHA's motion because it found that the common-law immunity for routine snow-removal activities did not extend to public housing authorities. The common law imposed the same duty on public housing authorities as it did on private property owners, namely, "[t]he obligation to exercise reasonable care in making the premises safe for its occupants." 249 *N.J.Super.* at 443, 592 *A.*2d 623.

## II

In 1972 the Legislature enacted the New Jersey Tort Claims Act, *N.J.S.A.* § 59:1–1 to 12–3 (the Act), in response to the judiciary's weakening of the traditional doctrine of sovereign immunity. *See Rochinsky v. State, Dep't of Transp.*, 110 *N.J.* 399, 404, 541 *A.*2d 1029 (1988) (describing the Act's history). The Legislative Declaration to the Act states that "public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." *N.J.S.A.* § 59:1–2.

Any liability of a public entity established under the Act "is subject to any immunity of the public entity." *N.J.S.A.* § 59:2–1(b). According to the official Comment, that section "is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions."

We recognize that "[i]mmunity is the dominant consideration of the Act." *Manna v. State*, 129 *N.J.* 341, 347, 609 *A.*2d 757 (1992) (citations omitted). As the Comment to *N.J.S.A.* § 59:2–1, further states, courts should employ an analysis that first asks *"whether an immunity applies and if not, should liability attach."*

■ JCHA alleges that both the weather immunity and the common-law immunity of public entities from liability for their snow-removal activities apply to bar plaintiff's suit. The burden of proof in establishing the applicability of the immunities rests with the public entity. *Manna v. State, supra*, 129 *N.J.* at 351, 609 *A.*2d 757. Reviewing all the facts and drawing all the inferences in plaintiff's favor, we conclude that JCHA failed to meet its burden in establishing the applicability of either the weather immunity or the common-law immunity.

## III

The weather-immunity provision of the Act provides:

Neither a public entity nor a public employee is liable for an injury caused solely by the effect on the use of streets and highways of weather conditions. [*N.J.S.A.* 59:4–7.]

■ We agree with both of the courts below that the weather-immunity provision does not apply because the accident did not occur on a "street" or "highway" for purposes of *N.J.S.A.* § 59:4–7. Neither the Act, its legislative history, nor any New Jersey case defines the words "street" or "highway" in the context of the weather-immunity provision. The New Jersey cases in which the applicability of the weather-immunity provision has been at issue have concerned accidents that occurred on or were caused by skids on streets or highways. *Manna v. State, supra,* 129 *N.J.* at 341, 609 *A.*2d 757; *Pico v. State,* 116 *N.J.* 55, 560 *A.*2d 1193 (1989); *Horan v. State,* 212 *N.J.Super.* 132, 514 *A.*2d 78 (App.Div.1986); *Meta v. Township of Cherry Hill,* 152 *N.J.Super.* 228, 377 *A.*2d 934 (App.Div.1977); *certif. denied,* 75 *N.J.* 587, 384 *A.*2d 818 (1977); *McGowan v. Borough of Eatontown,* 151 *N.J.Super.* 440, 376 *A.*2d 1327 (App.Div. 1977).

JCHA argues that the paved nature of the driveway and the vehicular traffic convert the driveway into a "street." The argument is unpersuasive. The area is limited in use and is intended exclusively for the housing complex's tenants and guests. It is not a through street. It is an internal driveway that serves only as an access route to the apartment complex. Common sense dictates that there is a difference between a "highway" or a "street," and a twenty-one-foot-wide internal driveway abutting parking spaces in an apartment complex.

We need not look only to the common usage of the words "street" and "highway" to decide that an internal driveway is not within the Act. According to the Municipal Land Use Law,

"Street" means any street, avenue, boulevard, road, parkway, viaduct, drive or other way (1) which is an existing State, county or municipal roadway, or (2) which is shown upon a plat heretofore approved pursuant to law, or (3) which is approved by official action as provided by this act, or (4) which is shown on a plat duly filed and recorded in the office of the county recording officer prior to review plats; and includes the land between the street lines, whether improved

or unimproved, and may comprise pavement, shoulders, gutters, curbs, side-walks, parking areas and other areas within the street lines. [*N.J.S.A.* 40:55D-7.]

The driveway located within the housing authority does not fall within any of the categories mentioned in the Municipal Land Use Law. Furthermore, JCHA's own site plan refers to the area in question several times as a "driveway."

Although Justice O'Hern's dissenting opinion states that "the access drives and parking areas of every public building and every public park, of every municipality, and of every public authority would lose the weather immunity" (*post* at 140, 619 *A.*2d at 583), that conclusion is unwarranted. The precise scope of the statutory terminology is not before us. Our conclusion that the internal driveway servicing defendant's apartment complex is not a "street" or "highway" does not resolve whether other roadways servicing public facilities are the essential equivalent of public streets covered by the immunity. Accordingly, we find that the slip and fall that occurred on an internal "driveway" did not occur on a "street" or "highway" under the weather-immunity provision. Hence, that provision does not protect JCHA.

Public entities are immune from suit for weather-caused accidents that occur on streets or highways, because the Legislature realized that "government should not have the duty to do everything that might be done." *N.J.S.A.* § 59:1-2. In *Pico, supra,* 116 *N.J.* at 55, 560 *A.*2d 1193, the plaintiff was struck by a skidding car as she was walking from the icy shoulder of the highway to call her employer. The Department of Transportation had been notified of the icy conditions approximately two hours before the accident, and an employee assured the Department that he would "handle it." The employee failed to clear the condition. We held that the State was immune from liability for failure to treat icy conditions on a highway when the condition had been caused solely by the weather, even if a State employee was negligent, unless the employee's conduct was "palpably unreasonable." *Id.* at 63, 560 *A.*2d 1193.

In *Pico* we were concerned about the potential unlimited liability that could arise if municipalities had to compensate every person injured from ice and snow on the State's hundreds of miles of streets and highways. We concluded that to impose such liability would be unreasonable because the State could not be everywhere immediately following a snow storm. That is one of the reasons why the weather-immunity is limited to accidents that occur on "streets" or "highways" and not on internal driveways, located within a housing complex, the site of plaintiff's slip and fall.

## IV

JCHA argues, however, that even if plaintiff's claim is not barred by the weather-immunity provision, it is barred by the immunity granted under the common law to public entities for their snow-removal activities.

The Tort Claims Act does provide that common-law immunities survive the enactment of the Act unless specifically overruled. Thus, JCHA argues that because a public housing authority is a public entity, it is entitled to the common-law immunity for ordinary "dangerous conditions" resulting from their snow-removal activities. We agree that public housing authorities are public entities under the Tort Claims Act. *See* *N.J.S.A.* 59:1–3. It is also true that the common law consistently recognized immunity for injuries caused by the snow-removal activities of most public entities. But that immunity was based primarily on the limitless liability that could be imposed on an entity, such as a state, county, municipality, or turnpike authority, that had the responsibility to clean up numerous streets and roads. The policy reasons behind the common-law immunity for public entities for snow-removal activities do not apply to a public housing authority, which has a finite area from which to remove the snow.

In *Rochinsky v. State of New Jersey Department of Transportation, supra*, 110 *N.J.* at 399, 541 *A.*2d 1029, we held that

the Tort Claims Act did not abrogate common-law immunity for snow-removal activities by public entities. Plaintiff in *Rochinsky* sued the State for damages he incurred after his car had overturned when it ran into a plowed snowbank deposited in the middle of the highway. He alleged that the Department of Transportation had removed the snow in a grossly negligent and hazardous manner. After tracing the history of common-law immunity for snow-removal activities prior to the Tort Claims Act, we found that "an expanded network of state and municipal roadways, along with increased traffic volume, render[ed] the task of snow removal a formidable public responsibility." *Id.* at 412, 541 *A.*2d 1029. We also noted that given the large area the State's employees would have to cover, a multitude of claims could be filed after each storm. *Id.* at 413, 541 *A.*2d 1029. Thus, we wrote, "we can conceive of no other governmental function that would expose public entities to more litigation if this immunity were to be abrogated." *Ibid.*

Defendant also points to the history of snow-removal cases prior to the passage of the Tort Claims Act and argues that the common law immunized public entities from liability. Although we have traditionally declined to hold the State liable for weather-related injuries, those cases can also be distinguished from the case *sub judice.*

In *Miehl v. Darpino*, 53 *N.J.* 49, 247 *A.*2d 878 (1968), the leading pre-Tort Claims Act case, we held that negligent snow removal did not give rise to liability even though the City's actions created a condition in which the plaintiff could not escape an oncoming automobile because of snow piles on the sidewalk and the street. The plaintiff in *Miehl* argued that the municipality should be liable when the negligent snow removal increased the hazard caused by the natural conditions of a snow storm. We disagreed, however, and found that the plaintiff's thesis would require municipalities to "broom sweep" all of the streets where natural snowfall had been displaced by snow removal. *Id.* at 53, 247 *A.*2d 878. Such a burden would be almost impossible for municipalities to fulfill, and we noted that

some snow removal was better than none. *Id.* at 54, 247 *A.*2d 878.

*Amelchenko v. Freehold Borough,* 42 *N.J.* 541, 201 *A.*2d 726 (1964), although not decided under the common-law but under a statute, is also instructive. There we held that the State had a duty to use ordinary care to remove snow from a municipal parking lot within a reasonable time after a snow storm. We noted that workmen had been clearing the streets around the clock, but had not yet reached the parking lot, even though the accident had occurred thirty-three hours after the termination of the storm.

In finding that the State had not breached its duty, we held that municipalities cannot be insurers of the public safety and that the determination of priorities for snow removal "is a matter of judgment committed under our system of government to the local authority and it should not be interfered with by the courts in a tort damage suit." *Id.* at 549, 201 *A.*2d 726. Nonetheless, we did not immunize public entities for *all* weather-related injuries. We established in *Amelchenko* that the courts should assess the nature of the breach of duty by examining whether the municipality had used due care in light of the factual situation with which it was faced. *Id.* at 551, 201 *A.*2d 726.

The theme running through both the pre and post-Tort Claims Act cases is that the imposition of liability on public entities responsible for the removal of snow on a network of state and municipal roadways could be limitless. Although JCHA asserts that this case is no different from the cases cited above, we find that the facts in Ms. Bligen's case differ substantially from those in *Rochinsky, Pico, Miehl,* and *Amelchenko.* Unlike the situations in *Miehl, Pico,* and *Rochinsky,* this accident did not take place on a highway or a municipally-owned road. The accident occurred on an internal driveway in an apartment complex. We acknowledge that the complex comprises over seven acres, including stairways, sidewalks and

driveways. Unlike a municipality, however, forced to determine which parts of the city warrant immediate attention, the housing-complex manager had a much smaller and self-contained area under his control and a proportionately large staff to carry out the clean-up. Defendant controlled a finite, bounded area. The apartment-complex manager did not have to determine which street among thousands would have to be cleaned first.

Our holding that public housing authorities may be liable for the weather-related injuries that occur as a result of their negligence comports with both the legislative intent behind the weather-immunity statute and the reasoning for the common-law immunity. The historical basis for the policy to immunize public entities from liability for negligent snow removal of streets and highways does not apply to public housing authorities and the cleanup of internal driveways.

The common-law immunity for snow-removal activities also did not apply to public housing authorities because under the common law, public housing authorities were deemed to owe the same standard of care to their tenants as did other commercial landlords.

## V

The drafters of the Tort Claims Act cautioned us about accepting "novel causes of action." Comment, *N.J.S.A.* 59:2-1. However, imposing liability on a housing authority that failed to use due care to safeguard its premises is not novel. Rather, it follows the long tradition in the common law of holding municipal landlords responsible for the reasonably-foreseeable consequences of their actions.

The law imposing tort liability on municipal landlords has been well established in New Jersey for over thirty years. In *Doud v. Housing Authority of Newark,* 75 *N.J.Super.* 340, 183 *A.*2d 149 (App.Div.1962), the court held that landlords had a duty to maintain the premises to prevent foreseeable injuries.

*Id.* at 345, 183 *A.*2d 149. The court made no distinction between municipal landlords and commercial landlords. *See also Hedges v. Housing Auth. of Atlantic City*, 21 *N.J.Super.* 167, 91 *A.*2d 88 (App.Div.1952) (holding that housing authority had duty to use due care to prevent invitee's injury on passageway; no distinction made between public and private landlords).

That same year we decided, in *Goldberg v. Housing Authority of Newark*, 38 *N.J.* 578, 186 *A.*2d 291 (1962), that although there was no duty to provide police protection, public housing authorities could still be liable for negligence. As Chief Justice Weintraub wrote:

> The Appellate Division held that notwithstanding the defendant's public nature, its liability for negligence must be adjudged on the principles of law applicable to the private owner of property. It reached that conclusion both because of the "proprietary" nature of the operation as that term is used in this field and because the statute under which defendant was formed reveals a legislative intent that the local authorities be accountable on that basis. [citations omitted]. Thus far we agree. [*Id.* at 581, 186 *A.*2d 291.]

The Appellate Division elaborated on the issue of municipal landlord liability in *Mayer v. Housing Authority of Jersey City*, 84 *N.J.Super.* 411, 202 *A.*2d 439 (1964), *aff'd o.b.*, 44 *N.J.* 567, 210 *A.*2d 617 (1965). In *Mayer* a father sued the Housing Authority after his son had been injured by a stone thrown in a playground. The manager of the housing complex had known for several months that children were throwing rocks in the playground area but failed to take reasonable measures to supervise the area. The Appellate Division held that

> [t]he rule is well-settled that a landlord owes to tenants and their children a duty of reasonable care as to such portions of the premises. [citations omitted]. Duty signifies conformance to a reasonable standard of legal conduct in the light of the apparent risk. [citations omitted]. Negligence arises from a breach of such duty and is relative to the time, place and circumstances. It is tested by whether the reasonably prudent person would recognize and foresee an unreasonable risk of harm to others. * * * *Notwithstanding the defendant's public nature, its liability for negligence must be adjudged on the principles of law applicable to private owners of property. Goldberg v. Housing Auth. of Newark*, 38 *N.J.* 578, 581 [186 *A.*2d 291] (1962). [84 *N.J.Super.* at 417–718, 202 *A.*2d 439, (emphasis added).]

Thus, under the common law, courts imposed tort liability on municipal housing authorities, despite the argument that their governmental nature rendered them immune. Like those courts, we find no reason to treat public landlords differently from other commercial landlords.

This Court decided in 1981 that commercial landowners are responsible for maintaining the public sidewalks abutting their property in a reasonably good condition. *Stewart v. 104 Wallace St., Inc.*, 87 *N.J.* 146, 157, 432 *A.*2d 881. In 1983, we held that that duty to use due care extends to snow and ice removal. *Mirza v. Filmore Corp.*, 92 *N.J.* 390, 395, 456 *A.*2d 518.

Defendant argues that public housing authorities are not like private landlords because they are precluded by state and federal statutes from raising rents. Thus, JCHA contends, it cannot be expected to have the same resources or maintain premises with the same efficiency as a private landlord. Although public housing authorities must operate within limited budgets, we cannot place an undue financial burden on the tenants.

Many commercial landlords also are unable to increase rents due to rent-control statutes. Nevertheless, we have not relieved them of liability simply because they cannot raise rents to defray expenses. Moreover, the JCHA apparently had the resources and personnel to clear the snow and ice—it simply failed to do so.

Thus, we conclude that under the common law, public housing authorities were not immune from liability for their snow-removal activities.

## VI

Although JCHA is not immune from liability to plaintiff under the common law or the weather-immunity provision of the Act, plaintiff still bears the heavy burden of establishing defendant's liability under the stringent provisions of the Tort Claims Act. In order to recover, plaintiff must still prove that

the housing authority was derelict in its duty to prevent dangerous conditions under *N.J.S.A.* ¶ 59:4–2. *Speakes v. Jersey City Housing Auth.*, 193 *N.J.Super.* 405, 474 *A.*2d 1081 (App. Div.1984), *certif. denied*, 97 *N.J.* 655, 483 *A.*2d 177 (1985). As the Appellate Division in this casè set forth,

> For plaintiff to recover under that section she must prove (1) that a dangerous condition existed on the property at the time of injury; (2) that the dangerous condition proximately caused the injury; (3) that the dangerous condition created a foreseeable risk of the kind of injury incurred; (4) that either (a) a public employee created the dangerous condition or (b) that a public entity had actual and constructive notice of the dangerous condition in sufficient time prior to the injury to have protected against the condition; and (5) that the action or inaction of the public entity in respect to its effort to protect against the condition was palpably unreasonable. [249 *N.J.Super.* at 444, 592 *A.*2d 623].

Moreover, Section 59:4–2 requires a higher burden of proof for a plaintiff than is demanded in ordinary common-law negligence cases. *Williams v. Phillipsburg*, 171 *N.J.Super.* 278, 286, 408 *A.*2d 827 (App.Div.1979) (stating that "we have no doubt that the duty of ordinary care, the breach of which is termed negligence, differs in degree from the duty to refrain from palpably unreasonable conduct. The latter implies a more obvious and manifest breach of duty and imposes a more onerous burden on the plaintiff") Whether JCHA's actions or inactions establish liability for its snow-removal activities under *N.J.S.A.* § 59:4–2 is a proper question for the jury. *Brown v. Brown*, 86 *N.J.* 565, 432 *A.*2d 493 (1981).

## VII

In conclusion, we hold that the weather immunity does not apply because the accident did not occur on a "street" or "highway" pursuant to *N.J.S.A.* § 59:4–7. We further find that prior to the enactment of the Act, the common-law immunity for the negligent removal of snow did not apply to a public housing authority not only because the authority's liability for negligent snow removal is limited to a finite area, but also because under common-law, public housing authorities were deemed to have the same obligation to their tenants as commer-

cial landlords. Moreover, we are satisfied that because of the substantial burden plaintiffs have under *N.J.S.A.* § 59:4–2 and the narrow scope of this holding, that public municipalities' liability for negligent snow removal will not be measurably increased.

We affirm the judgment of the Appellate Division and remand to the Law Division for further proceedings consistent with this opinion.

CLIFFORD, J., dissenting.

With today's decision the Court skates on thin ice. That a public entity enjoys immunity for garden-variety snow-removal activities, such as plaintiff alleges in this case, has been frozen in our jurisprudence for a quarter of a century. See *Miehl v. Darpino*, 53 *N.J.* 49, 247 *A.*2d 878 (1968). Indeed, in *Rochinsky v. State, Department of Transportation*, 110 *N.J.* 399, 541 *A.*2d 1029 (1988), we characterized the nature of that immunity as "absolute," *id.* at 402, 541 *A.*2d 1029, and held that it had survived the passage of the Tort Claims Act, *N.J.S.A.* 59:1–1 to 14–4. *Ibid.* The majority opinion today simply plows over our declaration in *Rochinsky* that the common-law immunity for snow-removal activities is "among the most significant immunities recognized by judicial decision prior to the adoption of the [Tort Claims] Act." *Id.* at 414, 541 *A.*2d 1029.

The Court offers two reasons for its refusal to afford snow-removal immunity to defendant Jersey City Housing Authority: (1) "[t]he historical basis for the policy to immunize public entities from liability for negligent snow removal of streets and highways does not apply to public housing authorities and the cleanup of internal driveways," *ante* at 134, 619 *A.*2d at 580; and (2) "under the common law, public housing authorities were deemed to owe the same standard of care to their tenants as did other commercial landlords," *ante* at 134, 619 *A.*2d at 580. The reasoning leaves me cold.

Although it readily acknowledges that a public housing authority is a public entity, *ante* at 131, 619 *A.*2d at 578, the majority seeks to differentiate this Authority from any other public entity on the basis that whereas a state, county, municipality, or turnpike authority would face "limitless liability" flowing from its "responsibility to clean up numerous streets and roads," *ante* at 131, 619 *A.*2d at 578, this defendant has only "a finite area from which to remove the snow." *Ante* at 131, 619 *A.*2d at 579. Putting aside the fact that all other public entities that are accorded immunity likewise must deal with a finite area (probably larger) with a limited work force (also larger), the argument does not stick because it overlooks the common denominator of the policy underlying the immunity: snow happens, snow can be guarded against to only a limited extent, snow invariably causes accidents in which people suffer injuries, and the taxpaying public—which ultimately pays any judgments against public entities—cannot withstand the avalanche of costs entailed in fighting a losing battle against nature or in handling the blizzard of lawsuits that will inevitably be filed by the unfortunate victims of snow and ice if the immunity heretofore afforded begins to melt away.

The second reason for withholding immunity—public housing authorities have been held, in other contexts, to the same common-law duties as commercial landlords, see *ante* at 134–137, 619 *A.*2d at 580–581—deserves but frosty comment: the cold, hard truth is that snow is different, for all the reasons set forth above. That realization is at the root of the entire body of law that sets snow-and-ice removal apart from other areas of tort law.

One can make a respectable argument for the sleighride that the Court takes us on today. Although I would not at all agree with that argument, I presume to suggest that the integrity of the common law would be better served by an outright acknowledgement that the Court is shovelling a new path. Short of that, the majority opinion strikes me as a snow job.

O'HERN, J., dissenting.

Few subjects divide the members of the Court as does a dispute about the relationship between the liability and immunity provisions of the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to :12–3. *See Weiss v. New Jersey Transit,* 128 *N.J.* 376, 380, 608 *A.*2d 254 (1992) (reciting a series of cases in which the Court was "frequently divided" in analyzing the cause of the injury).

I can agree with the majority that the housing authority, as landlord, might owe a duty (subject to *N.J.S.A.* 59:4–2) to provide a safe means of passage, free of snow or ice, on its interior walkways. I do not agree with the opinion of the majority insofar as it holds that the public driveways and parking areas of the housing authority do not share the weather immunity granted to the streets and highways of public entities under *N.J.S.A.* 59:4–7.

The Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to –129, states that street, when shown on a plat, means any *"drive or other way,"* as well as the "curbs, sidewalks, *parking areas* and other areas within the street lines." *N.J.S.A.* 40:55D–7 (emphasis added). Were "street" construed otherwise, the access drives and parking areas of every public building and every public park, of every municipality, and of every public authority would lose the weather immunity granted under *N.J.S.A.* 59:4–7. I do not believe that the Legislature intended to impose on public entities liability for weather-induced conditions in such public areas.

The majority views the housing authority as a landlord with the duty to provide its occupants with a safe place to live, at least in the common areas. As a consequence, the majority causes the statutory immunity to yield to a common-law duty.

This may be a beneficent policy choice but not one that courts are free to make. We have had to sustain these statutory immunities in the most painful of circumstances. *See Weiss v. New Jersey Transit, supra,* 128 *N.J.* 376, 608 *A.*2d 254; *Kol-*

*itch v. Lindedahl*, 100 *N.J.* 485, 497 *A.*2d 183 (1985). We are obliged to do so here. I would reverse the judgment of the Appellate Division.

*For affirmance and remandment*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, GARIBALDI and STEIN—5.

*For reversal*—Justices CLIFFORD and O'HERN—2.