**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3089-19

ELVIRA LEVITINA,

    Plaintiff-Appellant,

v.

NEW JERSEY TRANSIT
CORP.,

    Defendant-Respondent.

_____

Argued May 25, 2021 – Decided July 14, 2021

Before Judges Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3781-18.

Sander Budanitsky argued the cause for appellant.

Christopher M. Brady argued the cause for respondent (Camassa Law Firm, PC, attorneys; John A. Camassa, of counsel; Alexandra J. Taylor, on the brief).

PER CURIAM

Plaintiff Elvira Levitina appeals from the trial court's order granting summary judgment to defendant New Jersey Transit (NJ Transit) and dismissing with prejudice her single-count complaint alleging she was injured due to NJ Transit's negligence when, as a business invitee, she fell in February 2017, after stepping into a pothole located in a parking lot owned by defendant and then maintained by the Metuchen Parking Authority (the Authority) under the terms of an agreement with NJ Transit's predecessor (the Agreement).[1]

We review a trial court's summary-judgment ruling de novo, applying the same standard as the trial court, Conley v. Guerrero, 228 N.J. 339, 346 (2017); see also Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021), and consider whether the evidence, "when viewed in the light most favorable to the non-moving party," raises genuinely disputed issues of material fact sufficient to warrant resolution by the trier of fact, or whether the evidence is "so one-sided one party must prevail as a matter of law," Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citation omitted). A dispute of material fact is "genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate

---

[1] The parties to the 1957 Agreement were the Pennsylvania Railroad Company and the Parking Authority of the Borough of Metuchen, N.J.

A-3089-19

inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact."  R. 4:46-2(c); see also Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).  We review a trial court's legal conclusions de novo.  Clark v. Nenna, 465 N.J. Super. 505, 511 (App. Div. 2020).

The New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, "indisputably governs causes of action in tort against governmental agencies within New Jersey," Gomes v. Cnty. of Monmouth, 444 N.J. Super. 479, 487 (App. Div. 2016); see also N.J.S.A. 59:2-1(a); Nieves v. Off. of the Pub. Def., 241 N.J. 567, 571 (2020).  NJ Transit is a public entity.  Muhammad v. N.J. Transit, 176 N.J. 185, 194 (2003).  Because public entities are presumptively immune from tort liability unless a statutory exception expressly provides otherwise, N.J.S.A. 59:2-1(a); Manna v. State, 129 N.J. 341, 346 (1992), a negligence action against a public entity is circumscribed by the specific standards set forth in the TCA, see N.J.S.A. 59:4-2; see also N.J.S.A. 59:2-1(a) ("Except as otherwise provided by [the TCA], a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.").

The TCA subjects a public entity to a duty of care different from "that . . . owed under the negligence standard."  Polzo v. Cnty. of Essex, 209 N.J. 51,

3

75-76 (2012); see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 460-61 (2009). The TCA imposes a higher burden of proof on a plaintiff "than is demanded in ordinary common-law negligence cases." Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 137 (1993). We are thus unconvinced by plaintiff's misplaced reliance on cases in which general negligence standards were applied.

Under N.J.S.A. 59:4-2, a public entity is liable if a plaintiff establishes: (1) public "property was in dangerous condition at the time of the injury"; (2) "the injury was proximately caused by the dangerous condition"; (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition" or "a public entity had actual or constructive notice of the dangerous condition[.]" Additionally, a public entity is not liable for a dangerous condition of its property "if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." Ibid.

Plaintiff urges us to reverse the trial court's grant of summary judgment because genuine issues of material fact exist; specifically, as to whether: a dangerous condition existed in the parking lot; NJ Transit had notice of the condition; and NJ Transit's actions or inactions were palpably unreasonable.

A-3089-19

The trial court, in its oral decision, did not address all of N.J.S.A. 59:4-2's prongs. It found the Authority "was responsible for the maintenance and repairs of the parking lot as per the [terms of the Agreement], answers to interrogatories and the testimony of [an Authority manager]." As to the first and fourth prongs, the trial court determined

> conditions such as the one that led to the fall of [plaintiff] are to be expected given its nature and do not rise to the level of a dangerous condition within the meaning of the [TCA]. In the absence of expert testimony, [plaintiff] cannot establish that the driver [(sic)] was in a dangerous condition. [NJ Transit] did not have constructive, nor actual[,] notice[] of the condition.

We affirm because plaintiff failed to establish NJ Transit had notice of the pothole and that its failure to remedy the condition was palpably unreasonable.

In so deciding, we accept that the pothole, as shown in photographs appended to plaintiff's brief, was located in an area traversed by users of the parking lot. The depression, described as approximately two inches deep and several inches wide,[2] qualifies under the summary judgment standard as a

---

[2] The exact measurements of the pothole are unclear. At oral argument in the trial court and now in her appellate brief, plaintiff states the pothole was about two inches deep and several (four to six) inches across. Photographs of the pothole and a ruler suggest—albeit without much precision—that these measurements are correct.

A-3089-19

dangerous condition under the TCA:  "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  N.J.S.A. 59:4-1(a).

We disagree with the trial court that expert testimony was necessary to establish that the pothole qualified as a dangerous condition.  "Whether property is in a 'dangerous condition' is generally a question for the finder of fact. . . . Thus the standard is whether any member of the general public who foreseeably may use the property would be exposed to the risk created by the alleged dangerous condition."  Vincitore ex rel. Vincitore v. N. J. Sports & Exposition Auth., 169 N.J. 119, 123, 125 (2001).  Plaintiff was walking between her sister's car and the train platform when she stepped into the pothole she alleges was covered with leaves.  Her action was an "objectively reasonable use by the public generally" as "commuters [and] . . . other persons who park[] their cars [and] walk[] to [an adjacent] train station" are foreseeable users of a train station parking lot; and, as described by plaintiff, her use was "with due care."  Garrison v. Twp. of Middletown, 154 N.J. 282, 291, 293 (1998).  Consequently, the pothole, "considered together with the anticipated use of the property" presented "a substantial risk of injury."  Atalese v. Long Beach Twp., 365 N.J. Super. 1, 5-6 (App. Div. 2003) (holding that even though the pavement differential that

A-3089-19

caused the plaintiff's injury was only three-quarters of an inch, a jury could reasonably accept the three-quarter-inch differential as creating a substantial risk of injury because the differential was on an area of the roadway that walkers, runners, and bicyclists would foreseeably use).

Although plaintiff does not argue NJ Transit created or had actual notice of the pothole, she contends it had constructive notice because "[a] defect of such magnitude does not develop overnight."[3] Plaintiff contends "[i]t can reasonably be presumed that representatives and employees of NJ Transit regularly travel through" the parking lot, highlighting that "the NJ Transit manager of the station has a dedicated parking space that is merely feet from the defect." She further asserts regular inspections would have led to NJ Transit's discovery of the pothole.

Liability will be found if "a public entity had actual or constructive notice of the dangerous condition under [N.J.S.A.] 59:4-3 a sufficient time prior to the

---

[3] The trial court did not address, and NJ Transit did not in its merits brief challenge, that the pothole proximately caused plaintiff's injury or that the pothole created a reasonably foreseeable risk of the injury plaintiff suffered. We consider those issues waived and will not address those TCA prongs. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

injury to have taken measures to protect against the dangerous condition."

N.J.S.A. 59:4-2(b). But the entity will

> be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.
>
> [N.J.S.A. 59:4-3(b).]

Plaintiff did not establish when the pothole developed. Although an expert may not have been necessary to establish that the pothole was a dangerous condition, one might have presented evidence regarding how long the pothole existed. Plaintiff presented no expert or other evidence on that issue. That the pothole was covered with leaves on that early February day does not indicate when the pothole developed; fallen leaves could have accumulated in a brief time.

Nor did plaintiff establish how often the manager utilized the parking space, how often the manager had visited during the time the pothole existed or that the route taken by the manager in the lot would have reasonably led to the pothole's discovery. Certainly, the pothole was not that apparent. Neither plaintiff nor her sister, despite frequent use of the parking lot, saw the pothole prior to the accident. Moreover, plaintiff did not establish that the manager's

8

duties included inspecting for potholes or other defects, particularly since the Agreement provided that "[a]ll facilities installed by [the] Authority under [the] terms of this [A]greement," which included all grading and surfacing of the lot, "as well as all driveways and surfacing within the areas covered by this [A]greement are to be maintained and renewed by and at the cost of the [A]uthority."

The terms of the Agreement essentially gave the Authority full control over and responsibility for the upkeep of the parking lot. The Agreement, by its terms, was engendered by the overcrowding and congestion of parking facilities caused by business and commercial activity which "disadvantage[d]" the public. The parties deemed it in "the best interests of the public which uses the Railroad's facilities to create a coin[-]controlled parking operation on [NJ Transit's property], the said parking operation to be operated and managed by [the] Authority." Under the Agreement, besides maintaining and renewing the surfaces, the Authority agreed to: "promptly install, maintain, operate and manage" the parking facilities; grade, surface, light and make other improvements at its "sole cost"; reimburse NJ Transit for all taxes paid on the property or the Authority's "business and receipts"; clean and light the premises;

> furnish all labor and supervisory forces of every kind, and . . . employ, pay from [the] Authority's own funds

 A-3089-19

and discharge all persons engaged in the performance of [any and all work to be done by the Authority under the terms of the Agreement], and all such persons shall be and remain the sole employees and subject to [the] Authority's exclusive supervision, direction and control;

maintain liability coverage; and indemnify NJ Transit for any action brought for damages resulting from "any accident to any person or persons or property [occurring] in, on or in proximity to the premises" caused by the negligence of the Authority or its agents or employees.

Considering the responsibilities imposed upon the Authority under the Agreement, plaintiff proffered nothing to establish that NJ Transit had any duty to inspect the parking lot for potholes. There is no evidence that anyone previously complained to NJ Transit about potholes or any dangerous condition in the parking lot. That plaintiff did not ascertain the Authority's role in the parking operation during the discovery period does not impose greater duties on NJ Transit.

Given our conclusion that NJ Transit did not have constructive notice of the pothole that caused plaintiff's accident, its failure to repair it cannot be viewed as palpably unreasonable under the TCA. "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original)

10

(quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). It therefore follows that, absent notice, the public entity did not act in a palpably unreasonable manner. See Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002).

Even if we concluded NJ Transit had constructive notice of the pothole, plaintiff has not presented any facts that show NJ Transit's conduct was palpably unreasonable.[4] Apart from proof of notice, to establish liability against a public entity under N.J.S.A. 59:4-2, a plaintiff must establish a prima facie case that the action or inaction of the public entity was "palpably unreasonable." Coyne v. Dep't of Transp., 182 N.J. 481, 493 (2005); Maslo, 346 N.J. Super. at 349.

The term "palpably unreasonable" implies "behavior that is patently unacceptable under any given circumstance." Muhammad, 176 N.J. at 195; see also Ogborne, 197 N.J. at 459 (holding that, to constitute "palpably unreasonable" conduct, "it must be manifest and obvious that no prudent person would approve of [the] course of action or inaction" (citations omitted)). Whether the public entity's behavior was palpably unreasonable is generally a question of fact for the jury. Vincitore, 169 N.J. at 130. However, a determination of palpable unreasonableness, "like any other fact question before

---

[4] The trial court did not address this issue.

11

a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented." Maslo, 346 N.J. Super. at 351 (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)). Accordingly, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases." Id. at 350; see also Garrison, 154 N.J. at 311 (Stein, J., concurring).

Palpably unreasonable conduct "implies a more obvious and manifest breach of duty" than negligence "and imposes a more onerous burden on the plaintiff." Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App. Div. 1979). Plaintiff has not shown there was any reported complaint of a pothole. This was not a case where NJ Transit knew commuters could get hurt by the pothole but chose not to act. Importantly, NJ Transit contracted to have any driveways and surfacing maintained and renewed by the Authority. It did not retain any control over the maintenance of the lot. Indeed, the Authority was required to carry insurance to cover accidents like that alleged by plaintiff. She had recourse against the Authority but did not pursue it. Under these circumstances, no rational factfinder could find that it was palpably unreasonable for NJ Transit not to have inspected the lot for the pothole that caused plaintiff's unfortunate injury.

A-3089-19

Summary judgment was appropriate; affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3089-19