688 A.2d 643

ADA ROSSI, PLAINTIFF–RESPONDENT, v. BOROUGH OF HADDONFIELD, AND JOHN DOE PROPERTY OWNER, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 29, 1997—Decided February 19, 1997.

Before Judges SHEBELL, PAUL G. LEVY and BRAITHWAITE.

*W. Thomas McBride* argued the cause for appellant (*Crawshaw, Mayfield, Riordan, Turner, O'Mara, Donnelly, Thomas & McBride,* attorneys; *Lynn M. Burgess,* on the brief).

*John D. Borbi* argued the cause for respondent (*Friedman, Bafundo & Porter,* attorneys; *Mr. Borbi,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

This matter comes to us on leave to appeal granted from the denial of the motion of defendant, Borough of Haddonfield, for summary judgment. The complaint of plaintiff, Ada Rossi, alleged the Borough negligently maintained a municipal parking lot in a dangerous condition causing her to fall and sustain serious inju-

ries. We reverse and remand for dismissal of the complaint on the grounds of common law snow removal immunity.

On January 17, 1994, when plaintiff arrived at work, she noticed that the Borough parking lot, where she had a permit to park, was icy. It appeared in this same condition the week before the accident, at which time a co-worker called to inform the Borough of this icy condition. Plaintiff left work later in the day on an errand for her employer and fell as she was unlocking her car. It was just beginning to snow at the time she fell. She fractured her ankle and despite multiple surgeries, is permanently injured.

The Borough owns the parking lot which, as all municipal parking lots in the Borough, required either the use of a parking meter or the purchase of a parking permit. There is a designated area for permit holders; however, it does not appear that permit holders have a specifically numbered space in which only they may park.

There had been light rain on Friday January 14, 1994, which turned to ice after the weather turned colder. The cold weather continued on Saturday January 15, 1994 and Sunday January 16, 1994, causing the ice to remain through the weekend. Snow began in Haddonfield about mid-morning on Monday January 17, 1994. The Borough stated in its answers to interrogatories that the lot was sanded on January 15, 1994. However, in his deposition, the Borough's Superintendent of Public Works could not specifically say that this parking lot had been sanded the weekend prior to the accident.

The Borough has between seven and eight full time employees who are assigned to the Streets Division, which has the function of snow removal and sanding. There are between seventy and ninety miles of roads which the Borough must maintain, not including sidewalks adjacent to municipal buildings and parking lots. The Borough has developed a priority system for snow removal under which the roads are attended to first, then areas adjacent to the entities providing emergency services, and finally the parking lots are cleared and/or sanded.

In denying the Borough's motion for summary judgment, the judge stated:

> I read the tort immunity statute the same way. It talks about streets and highways. This is not a street and highway. The government chooses to get itself involved in a revenue generating business, running a parking lot. They put themselves in the same position as Kinneys or any of the other parking lot operators. If they were operating a delicatessen, would they have immunity? I would think not. But the fact that it involves weather doesn't change the situation whatsoever. So the motion will be denied.

When the Borough moved for reconsideration, the judge declined to vacate his previous order and analogized the Borough's operation of the parking lot as akin to the operation of a private business or commercial landlord.

 The New Jersey Legislature enacted the New Jersey Tort Claims Act ("TCA", "Act"), *N.J.S.A.* 59:1–1 to 5–6, to reestablish immunity for public entities that had been gradually eroded by judicial decisions. *Rochinsky v. New Jersey Dep't of Transp.*, 110 *N.J.* 399, 404, 541 *A.*2d 1029 (1988). The Legislature specifically provided that a court should first determine " 'whether an immunity applies and if not, should liability attach.' " *Id.* at 408, 541 *A.*2d 1029 (quoting *N.J.S.A.* 59:2–1 Task Force Comment). "The burden of proof in establishing the applicability of the immunities rests with the public entity." *Bligen v. Jersey City Hous. Auth.*, 131 *N.J.* 124, 128, 619 *A.*2d 575 (1993). When ruling on whether a public entity is immune, we must determine the cause of the accident and then decide if the Legislature intended to immunize the public entity from liability under those conditions. *Saldana v. DiMedio*, 275 *N.J.Super.* 488, 496, 646 *A.*2d 522 (App.Div.1994). The Borough contends that common law snow removal immunity applies to bar suit in this case.

*R.* 4:46–2 governs the disposition by summary judgment. Summary judgment should be granted

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [*R.* 4:46–2(c).]

The proper inquiry is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Brill v. Guardian Life Ins. Co.,* 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995)(quoting *Anderson v. Liberty Lobby, Inc.* 477 *U.S.* 242, 251–52, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)). If the Borough is entitled to immunity, summary judgment should have been granted as the Borough would " 'prevail as a matter of law.' " *Ibid.*

■ Common law snow removal immunity was established in *Miehl v. Darpino,* 53 *N.J.* 49, 247 *A.*2d 878 (1968). Plaintiff, a pedestrian, was struck by a car when his path to the sidewalk was blocked by a snowbank created by city workers. *Id.* at 50–51, 247 *A.*2d 878. He sued the city, alleging that the workers had created a dangerous condition. *Ibid.* The Supreme Court recognized the dangers the accumulation of snow presents to the general public, but explained that to hold a public entity liable for negligent snow clearing would essentially require that entity to "broom sweep" the areas from which they removed snow. *Id.* at 53, 247 *A.*2d 878. Thereafter, in *Rochinsky, supra,* the Court made it clear that this common law immunity was not invalidated by the enactment of the TCA. 110 *N.J.* at 402, 541 *A.*2d 1029.

The facts here are clearly within those contemplated by the *Miehl* Court in establishing snow removal immunity. "The unusual traveling conditions following a snowfall are obvious to the public. Individuals can and should proceed to ambulate on a restricted basis, and if travel is necessary, accept the risks inherent at such a time." *Miehl, supra,* 53 *N.J.* at 54, 247 *A.*2d 878. We recognize that the Borough presented evidence that its Streets Division sanded the parking lot over the weekend prior to plaintiff's injury. However, even if the parking lot remained in a dangerous condition due to the negligent sanding by Borough employees, snow removal immunity would apply to bar recovery. Negligent sanding is well within the remedial activity related to snow removal contemplated by the immunity. *Farias v. Town-*

*ship of Westfield,* 297 *N.J.Super.* 395, 403, 688 *A.*2d 151 (App.Div. 1997).

Plaintiff also claims that the Borough's failure to warn of the icy condition gives rise to liability in this case. However, the Court in *Rochinsky, supra,* held only that a cause of action *"unrelated* to snow removal activity" may be maintained under *N.J.S.A.* 59:4–4, if the conduct amounted to "palpably unreasonable failure to warn of a dangerous condition." 110 *N.J.* at 415 n. 7, 415–17, 541 *A.*2d 1029 (emphasis added). The failure to warn here is indeed related to snow removal activity and not an "unrelated" condition as in *Meta v. Township of Cherry Hill,* 152 *N.J.Super.* 228, 377 *A.*2d 934 (App.Div.), *certif. denied,* 75 *N.J.* 587, 384 *A.*2d 818 (1977) and *McGowan v. Borough of Eatontown,* 151 *N.J.Super.* 440, 376 *A.*2d 1327 (App.Div.1977). *See Farias, supra,* 297 *N.J.Super.* at 400–01, 688 *A.*2d 151. In both *Meta* and *McGowan,* we found that the public entity's failure to warn of a dangerous condition required submission to a jury. *Meta, supra,* 152 *N.J.Super.* at 232, 377 *A.*2d 934; *McGowan, supra,* 151 *N.J.Super.* at 448, 376 *A.*2d 1327. The factor present in *Meta* and *McGowan* which is absent from this case, is that the dangerous condition was contributed to by circumstances unrelated to the weather. *See Farias, supra,* 297 *N.J.Super.* at 500–01, 688 *A.*2d 151. Here, the condition was caused solely by the weather and there are no allegations that the parking lot was improperly constructed or had improper drainage mechanisms.

Further, the icy conditions were not limited to the parking lot in question; presumably, roads throughout the Borough were in a similar state as a result of the precipitation and subsequent low temperatures during the days preceding plaintiff's injury. Finally, as the Borough has indicated, because of limited resources and the large area it must attend to, the roads and areas adjacent to municipal buildings and buildings which house emergency services are tended to before the municipal parking lots. It is not for the courts to second guess the municipality in such matters. *See*

*Amelchenko v. Freehold Borough,* 42 *N.J.* 541, 549, 201 *A.*2d 726 (1964).

■ Plaintiff also maintains that summary judgment was correctly denied based on the holding in *Bligen, supra,* 131 *N.J.* 124, 619 *A.*2d 575. In that case, the plaintiff, who lived in a complex owned by the Jersey City Housing Authority ("JCHA"), slipped on the ice and fell as she stepped off the curb into the parking lot of the complex. *Id.* at 126–27, 619 *A.*2d 575. The Supreme Court declined to extend common law snow removal immunity to the JCHA for two main reasons. *Id.* at 126, 619 *A.*2d 575. First, the Court recognized that "[t]he theme running through both the pre and post-Tort Claims Act cases is that the imposition of liability on public entities responsible for the removal of snow on a network of ... roadways could be limitless." *Id.* at 133, 619 *A.*2d 575. Thus, the Court reasoned that the "policy reasons behind the common-law immunity for public entities for snow-removal activities do not apply to a public housing authority, which has a finite area from which to remove the snow." *Id.* at 131, 619 *A.*2d 575. Secondly, the Court refused to apply snow removal immunity to the JCHA due to the already established law regarding the tort liability of municipal landlords, i.e., that they have "a duty to maintain the premises to prevent foreseeable injuries." *Id.* at 134, 619 *A.*2d 575 (citation omitted). Therefore, the holding in *Bligen* by its own rationale is totally inapplicable here.

Plaintiff has attempted to classify the Borough as a "landlord" by virtue of the sale of parking permits in order to come within the *Bligen* rationale. There is, however, no landlord-tenant relationship created by the Borough regulating parking through meters and permits. Plaintiff gained no property right as a consequence of the purchase of a parking permit. Plaintiff was not promised and need not receive any greater protection against weather and its consequences simply because she procured the right to park in a designated area.

■ The judge denied summary judgment based upon his comparison of the Borough's permit parking lot to a commercial

business. We reject this basis. *N.J.S.A.* 39:4–197 provides for municipal regulation of parking within the municipality.

[A] municipality may pass ordinances or resolutions ... regulating special conditions existent in the municipality on the subjects....

. . . .

g. Regulating the parking of vehicles upon land owned or leased and maintained by the municipality, a parking authority or the board of education of a school district, including any lands devoted to the public parking of vehicles, entrances thereto and exits therefrom[.]

[*N.J.S.A.* 39:4–197(1)g.]

The regulation of parking lots is an exercise of the Borough's police power. *Garden State Racing Ass'n v. Cherry Hill Tp.*, 42 *N.J.* 454, 461, 201 *A.*2d 554 (1964); *State v. Kraus*, 225 *N.J.Super.* 312, 315, 542 *A.*2d 483 (App.Div.1988). This regulation has taken the form of requiring the purchase of a parking permit or the payment of a parking meter fare. Revenue derived from this regulation may be used to defray the cost of the regulation, but a municipality may not regulate in order to raise revenue. *Board of Commissioners of City of Newark v. Local Government Board of New Jersey*, 133 *N.J.L.* 513, 515, 45 *A.*2d 139 (1945). Therefore, the regulation of parking by meter or permit does not transform the Borough's actions into those of a commercial business. It must be presumed that the Borough has acted lawfully, and plaintiff offers no evidence to the contrary.

We reverse and remand. The trial court shall enter summary judgment in favor of defendant, based upon the application of common law snow removal immunity.