705 A.2d 1259

LAWRENCE LATHERS AND VERONICA LATHERS, PLAINTIFFS–APPELLANTS, v. TOWNSHIP OF WEST WINDSOR, JOHN DOE I AND JOHN DOE II, FICTITIOUS DESIGNATIONS, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 21, 1998—Decided February 23, 1998.

---

Dreier, P.J.A.D., filed a concurring opinion.

Before Judges DREIER, KEEFE and WECKER.

*Stark & Stark*, attorneys for appellants (*Glen D. Gilmore*, on the brief).

*Hartsough, Kenny & Chase*, attorneys for respondent Township of West Windsor (*David J. Kenny*, of counsel; *Gregory J. Sullivan* and *Mr. Kenny*, on the brief).

The opinion of the court was delivered by

KEEFE, J.A.D.

Plaintiffs, Lawrence and Veronica Lathers, appeal from the entry of summary judgment in favor of defendant Township of West Windsor (Township).[1]

Plaintiff's suit against the Township stems from his fall caused by a patch of ice on a sidewalk leading from the Township's municipal building complex to a parking lot. Apparently, snow had been removed from the sidewalk at an earlier time and piled adjacent to the walk. The claim was that the snow melted onto the sidewalk and froze.

The Township moved for summary judgment claiming immunity. The trial judge granted the motion, and this appeal followed. We affirm.

The issue presented by this appeal is whether immunity for injuries stemming from snow removal operations is available to the Township either under a specific provision of the Tort Claims Act or under common law. The Tort Claims Act affords immunity for injuries "caused solely by the effect on the use of streets and highways of weather conditions." *N.J.S.A.* 59:4–7. Clearly, that provision does not apply here where plaintiff's injuries did not occur on a street or highway and "are allegedly caused by a combination of the weather and other factors." *Rochinsky v. State of N.J. Dep't of Transp.*, 110 *N.J.* 399, 410–11, 541 *A.*2d 1029 (1988).

---

[1] Veronica Lathers is the wife of Lawrence Lathers and sues *per quod*. All references in this opinion to "plaintiff" shall be to Lawrence.

■ Prior to the Tort Claims Act, however, our courts recognized a common law immunity stemming from negligence in the removal of snow from public property. The common law immunity was established in *Miehl v. Darpino*, 53 *N.J.* 49, 247 *A.*2d 878 (1968) and survived the passage of the Tort Claims Act. *Rochinsky, supra,* 110 *N.J.* at 411–14, 541 *A.*2d 1029. Indeed, the Supreme Court considers "the common-law immunity for the snow-removal activities of public entities to be among the most significant immunities recognized by judicial decision prior to the adoption of the Act." *Id.* at 414, 541 *A.*2d 1029. That is so because:

> [n]o matter how effective an entity's snow-removal activities may be, a multitude of claims could be filed after every snowstorm. We can conceive of no other governmental function that would expose public entities to more litigation if this immunity were to be abrogated.
>
> [*Id.* at 413, 541 *A.*2d 1029.]

If liability were to be imposed on a public entity for injuries caused by its snow removal, it would be required to "broom sweep" the areas from which it removed snow. *Miehl, supra,* 53 *N.J.* at 53, 247 *A.*2d 878. Further, "[t]he high cost of such an undertaking could make the expense of any extensive program of snow removal prohibitive and could result in no program or in an inadequate partial program." *Id.* at 54, 247 *A.*2d 878. Therefore, since "[t]he public is greatly benefitted even by snow removal which does not attain the acme of perfection of 'broom swept' streets," a public entity will not be held liable for injuries arising from its snow removal activities. *Ibid.*

■ In this case, the municipal employees shoveled the sidewalk but, under plaintiff's theory, were negligent in not preventing melting snow from running onto the adjacent sidewalk and refreezing, or removing it once it accumulated there. In our view, this is the type of activity that the *Miehl* Court specifically intended to immunize. *See Miehl, supra,* 53 *N.J.* at 53–54, 247 *A.*2d 878; *Farias v. Township of Westfield,* 297 *N.J.Super.* 395, 688 *A.*2d 151 (App.Div.1997) (applying common law immunity to ice patches on a public sidewalk). Even if plaintiff was to argue

that the Township's liability rested in its failure to salt and sand the icy patches once formed, rather than to simply argue that the snow was removed negligently in the first instance, immunity applies. "[S]alting and sanding fall under the umbrella of snow removal activities." *Farias, supra,* 297 *N.J.Super.* at 402, 688 *A.*2d 151. There is no allegation in this case that the Township was actually aware of the existence of the ice patch and "blatantly ignored it." *Ibid.; see also Rochinsky, supra,* 110 *N.J.* at 415 n. 7, 541 *A.*2d 1029 (holding that there may be an exception to the common law immunity where the conduct of the public entity was "unrelated to snow-removal activity" and amounted to "palpably unreasonable failure to warn of a dangerous condition").[2]

Plaintiff contends, however, that *Bligen v. Jersey City Housing Authority,* 131 *N.J.* 124, 619 *A.*2d 575 (1993) affords a basis for relief in this case. In *Bligen,* the plaintiff, who lived in a complex owned by the Jersey City Housing Authority, slipped on ice and fell as she stepped off the curb into the parking lot of the complex. *Id.* at 126–27, 619 *A.*2d 575. The Supreme Court declined to extend common law snow removal immunity to the Housing Authority. Plaintiff contends that the rationale of the *Bligen* decision is found in the fact that the fall in that case occurred on a sidewalk owned and maintained by the entity, that it employed a crew for snow removal, and that the Housing Authority had a "finite area" from which to remove snow. *Id.* at 137, 619 *A.*2d 575. Because those facts are also common to the case under consideration, plaintiff reasons that the *Bligen* rule should apply here.

We disagree with plaintiff that the *Bligen* decision turned on those factors. Rather, we view *Bligen* as a narrow exception to the snow removal immunity established by *Miehl* and *Rochinsky.* Our interpretation of *Bligen* is supported by a recent opinion of this court. *Rossi v. Borough of Haddonfield,* 297 *N.J.Super.* 494,

---

[2] This possible exception to snow removal immunity rests on a different theory of liability and is more fully developed in Judge Dreier's concurring opinion. It requires additional evidence that was not presented to the trial court.

688 *A*.2d 643 (App.Div.), *aff'd o.b.,* 152 *N.J.* 43, 702 *A*.2d 1285 (1997). In *Rossi,* the plaintiff fell in a municipal parking lot that had been sanded a few days before her fall but, nonetheless, contained patches of ice on the day of the accident. Plaintiff paid for a permit to park in the lot and claimed that, because the accident happened on a parking lot rather than a street, and because she paid for a parking permit, her status was like that of the plaintiff in *Bligen.* This court rejected that argument and applied common law immunity to the public entity's allegedly negligent snow removal activity. *Id.* at 501–02, 688 *A*.2d 643.

The essence of the *Bligen* opinion is found in the following passage.

> The common-law immunity for snow-removal activity … did not apply to public housing authorities because under the common-law, public housing authorities were deemed to owe the same standard of care to their tenants as did other commercial landlords.
>
> [*Bligen, supra,* 131 *N.J.* at 134, 619 *A*.2d 575.]

The *Bligen* Court was aware of the Legislature's admonition that courts should not accept "novel causes of action." *Ibid.* (quoting Comment to *N.J.S.A.* 59:2–1). Thus, the Court made it clear that it was simply following "the long tradition in common law of holding municipal landlords responsible for the reasonably-foreseeable consequences of their actions." *Ibid.* Because there was no landlord-tenant relationship established in *Rossi,* immunity applied. That rationale applies more forcefully under the facts of this case. To recognize plaintiff's cause of action would be to accept a novel cause of action not heretofore recognized in this State.

Affirmed.

DREIER, P.J.A.D. (concurring).

I fully concur with Judge Keefe's exposition of the current law as it relates to the claim actually made in this case. Plaintiffs asserted a common law claim for the municipality's failure to remove ice and snow. This case was not presented as one of Tort Claims Act liability under *N.J.S.A.* 59:4–1 *et seq.*

The Supreme Court in *Rochinsky v. State, Dep't of Transp.*, 110 *N.J.* 399, 415 n. 7, 541 *A.*2d 1029 (1988), as cited by Judge Keefe, stated that it did not there consider the outer limits of *Miehl v. Darpino*, 53 *N.J.* 49, 247 *A.*2d 878 (1968). However, if allegations "may suggest culpable conduct, unrelated to snow removal activity, consisting of a palpably unreasonable failure to warn of a dangerous condition, that cause of action could be maintained notwithstanding the *Miehl* immunity." *Rochinsky, supra*, 110 *N.J.* at 415 n. 7, 541 *A.*2d 1029. The Court in *Rochinsky* further discussed other possible liability in that snow-removal case, such as for the failure to provide emergency signals under *N.J.S.A.* 59:4–4. *Id.* at 415, 541 *A.*2d 1029.

Here, plaintiff, akin to an invitee on private property, has been injured, and the municipality, but for the common law rule discussed by Judge Keefe, would be held to the standard of any private property owner, with the additional safeguards provided by the Tort Claims Act, and particularly *N.J.S.A.* 59:4–2, relating to the dangerous conditions of public property. The municipality had undertaken to remove snow from the finite areas of the walkways at the municipal building, and to my mind, the common law immunity for a dangerous condition created by such snow-removal might be sufficiently anachronistic to require re-examination.

Municipalities carry much the same insurance as private parties. Also, the Tort Claims Act recognizes liability for other dangerous conditions of municipal property, subject to the stringent limitations of that Act. *See N.J.S.A.* 59:4–2. I see no reason why liability, subject to the statutory standards of notice and proof of the condition, should logically be withheld in a case such as the one before us. Why should the municipality be liable for a pothole in the sidewalk, but not for an ice patch? In both cases an innocent plaintiff might be injured, and a municipality would be protected by liability insurance. The area was not a public street or parking lot requiring plowing, but was a shovelled walkway that only required the spreading of a few handfuls of sand.

If the common law liability of the Housing Authority could be declared in *Bligen v. Jersey City Housing Auth.*, 131 *N.J.* 124, 619 *A.*2d 575 (1993), to be akin to that of a private owner of apartment

units, I see no undue burden on municipalities for liability to be imposed in a case such as the one before us. I suggest, therefore, that the Supreme Court might review the existing law, perhaps to declare that sidewalk ice or snow hazards be treated as any other dangerous condition under the Tort Claims Act.

I recognize that where the Supreme Court has spoken, we must defer and await the re-examination of the problem. I therefore concur in both the statement of the law and the result reached in Judge Keefe's opinion.