**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4856-17T2

BARBARA SANTOPIETRO
and GABRIEL SANTOPIETRO,
her husband,

     Plaintiffs-Appellants,

v.

BOROUGH OF UNION
BEACH, VOLLERS EXCAVATING
& CONSTRUCTION, and NJ
AMERICAN WATER COMPANY,

     Defendants,

and

BOROUGH OF UNION BEACH,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

VOLLERS EXCAVATING &
CONSTRUCTION and NJ
AMERICAN WATER COMPANY,

     Third-Party Defendants.

_____

Argued March 27, 2019 – Decided July 8, 2019

Before Judges Fuentes and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0097-16.

Robert J. Hobbie argued the cause for appellants (Hobbie, Corrigan & Bertucio, PC, attorneys; Robert J. Hobbie, of counsel and on the brief).

Sean D. Gertner argued the cause for respondent (Gertner & Gertner, LLC, attorneys; Sean D. Gertner, on the brief).

PER CURIAM

Plaintiffs Barbara and Gabriel Santopietro appeal from the trial court's summary judgment dismissal of their complaint against defendant Borough of Union Beach (Borough), and the court's denial of their motion to reconsider the grant of summary judgment,[1] after Barbara[2] suffered injuries when she allegedly fell on black ice that formed as a result of the Borough's purported failure to correct a dangerous condition of which it had notice; Gabriel filed a concomitant

---

[1] Plaintiffs did not advance any argument in their merits brief regarding the denial of the reconsideration motion. As such, the issue is not properly before us and is deemed waived. Skldowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding "an issue not briefed on appeal is deemed waived").

[2] We use the plaintiffs' first names to avoid confusion; we mean no disrespect by such familiarity.

A-4856-17T2

per quod claim. We affirm because the Borough enjoyed immunity under the Tort Claims Act (TCA).

The intent of the TCA is "to reestablish a system in which immunity is the rule, and liability the exception." Bombace v. City of Newark, 125 N.J. 361, 372 (1991). The State's public policy is that public entities, such as a municipality, "shall only be liable for their negligence within the limitations of [the TCA] and in accordance with the fair and uniform principles established [in the TCA]." N.J.S.A. 59:1-2. "In other words, a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cty. of Essex (Polzo II), 209 N.J. 51, 65 (2012) (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)).

We extend to plaintiffs all favorable inferences from the motion record evidence. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). In their merits brief, plaintiffs assert in 2011 Gabriel observed that whenever it rained, "large pools of stagnant water" formed in the front of plaintiffs' home, causing him to make

> verbal complaints to the Borough [Department] of Public Works about the pools of stagnant water reoccurring on his street after rainfall. After receiving these verbal complaints, the improperly pitched road

was 'milled' for a portion by [the Borough]. As a result of [the Borough's] efforts, the reoccurring pooling problem was temporarily eliminated.

After Gabriel's complaint, the milled road directed water to a sewer grate, eliminating the ponding.

About two years later, the road was repaved following the installation of a water main, after which Gabriel maintained a "different" type of flooding occurred: "[W]hen the water started to pool in front of my house obviously it had nowhere to go, there's no drain, [and] it would get bigger and bigger. Now it's coming up my driveway and now it's coming into my front yard." On March 9, 2015 plaintiff fell on black ice while walking to her car, sustaining injuries she avers were caused by a known dangerous condition.

Plaintiffs argue the trial court erred by finding: the Borough enjoyed common law immunity; plaintiffs' failure to provide written notice of the dangerous condition to the Borough barred their claims; and the Borough did not receive notice and was not liable under N.J.S.A. 59:4-2. Plaintiffs further argue that N.J.S.A. 59:4-7 did not immunize the Borough against liability. We review a grant of summary judgment de novo, observing the same standard as the trial court. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). Summary judgment should be granted only if the record demonstrates there is "no genuine

issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

Public entities enjoy immunity "for an injury caused solely by the effect on the use of streets and highways of weather conditions." N.J.S.A. 59:4-7. Similarly, the common law doctrine of snow removal – engendered from the concept that complete "broom-swept" snow clearance is unrealistic, and even negligent snow removal is better than no snow removal, Miehl v. Darpino, 53 N.J. 49, 54 (1968) – "consistently recognized immunity for injuries caused by the snow-removal activities of most public entities." Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 131 (1993). "By their very nature . . . snow-removal activities leave behind 'dangerous conditions.'" Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 413 (1988). Like salting and sanding, shoveling and snow-blowing "fall under the umbrella of snow removal activities." Lathers v. Twp. of W. Windsor, 308 N.J. Super. 301, 304-05 (App. Div. 1998).

Although we do not see that the trial court addressed the statutory immunity provided by N.J.S.A. 59:4-7, that statute "does not apply in cases where injuries are allegedly caused by a combination of the weather and other factors." Rochinsky, 110 N.J. at 410-11. "If the weather combined with another cause or causes actionable under the [TCA] . . . then this specifically conferred

climatological immunity would not operate as a bar because of the express statutory use of the word 'solely.'" McGowan v. Borough of Eatontown, 151 N.J. Super. 440, 447 (App. Div. 1977); see also Meta v. Twp. of Cherry Hill, 152 N.J. Super. 228, 232 (App. Div. 1977). Further, the common law immunity cases, Miehl, Rochinsky and Lathers, each considered claims solely based on negligent snow removal, independent of any other cause. As we have elsewhere observed, "if allegations 'may suggest culpable conduct, unrelated to snow removal activity, consisting of a palpably unreasonable failure to warn of a dangerous condition, that cause of action could be maintained notwithstanding the Miehl [common law] immunity.'" Lathers, 308 N.J. Super. at 307 (Dreier, J., concurring) (quoting Rochinsky, 110 N.J. at 415 n.7).

The Borough contends in its merits brief that because Barbara deposed "she thought it had snowed two or three days prior to her accident and that the Borough had plowed the street" and "did not observe any water on the ground that morning," "it appears that [she] slipped and fell on black ice, which was a result of melting and refreezing after the Borough's snow plowing a few days prior to [her] accident." These contentions, however, do not consider the facts in the light most favorable to plaintiffs, the non-moving party. R. 4:46-2(c); Brill, 142 N.J. at 540.

6

Contrary to the Borough's present argument that plaintiffs "insist for the first time that the sheet of ice was a result of pooling on the street that was not resolved by the Borough," the report of plaintiffs' engineering expert noted: when New Jersey American Water Company and Vollers Excavation and Construction replaced the water main in the road in 2013, the road was not milled to direct water to the catch basin to which it was diverted when the road was milled in 2011; as a result, "[m]ore water than ever" accumulated in front of and on plaintiffs' property; the road repavement after the water-line installation led to a low area in front of plaintiffs' property and the water accumulation problem worsened; the failure to address the "flooding and drainage problem" caused by the improper slope of the road led to the icy condition on the roadway that Barbara encountered on March 9, the date of the accident; Barbara claimed the temperature was cold and it was not snowing when the accident occurred; and a meteorological report confirmed low temperatures of 32 degrees to 35 degrees Fahrenheit with light rain and drizzle with three to four inches of snow on the ground on the morning of March 9.

Thus we agree with plaintiffs that the trial court erred when it agreed with the Borough's argument and held the Borough enjoyed common law immunity. The record established a possible cause for Barbara's injuries other than the

A-4856-17T2

Borough's snow removal efforts. As such, the Borough should not have been afforded immunity under N.J.S.A. 59:4-7 or the common law.

We do agree with the trial court that the record is bereft of any notice of the icy condition prior to the accident. In order to establish a claim under N.J.S.A. 59:4-2, plaintiffs were required to establish the road was in a dangerous condition that proximately caused a reasonably foreseeable risk of injury, that the Borough had actual or constructive knowledge of the dangerous condition and sufficient time to take protective measures, and the Borough's inaction was palpably unreasonable. See, e.g., Garrison v. Twp. of Middletown, 154 N.J. 282, 286-87 (1998); Carroll v. N.J. Transit, 366 N.J. Super. 380, 386-87 (App. Div. 2004).

The trial court erred when it determined that notice had to be written in order to establish the Borough's actual knowledge. The Supreme Court determined, in Chatman v. Hall, a neighbor's affidavit that he made "calls" to the municipality about a hole in which a plaintiff fell created a reasonable inference that municipal employees had notice of the hole notwithstanding the municipality's contention that it had no record of the calls. 128 N.J. 394, 400, 418 (1992), superseded by statute on other grounds, N.J.S.A. 59:3-1(c), as recognized in Graber v. Richard Stockton Coll. of N.J., 313 N.J. Super. 476, 487

(App. Div. 1998); see also McGowan, 151 N.J. Super. at 445, 448 (holding testimony that telephone calls from borough police to the State requesting sanding or salting of icy accumulations on a road provided "prima facie proof that the State had actual notice of the general tendency of [icy spots on] the roadway").

Plaintiffs maintain Gabriel, in a chance encounter in a pizzeria, explained to the Borough's mayor in the summer of 2014, after the road was paved, "how the water was laying in front of [Gabriel's] house really bad." Plaintiffs also contend their neighbor confirmed that ponding occurred "every time it rained after the street was replaced in 2013," and that she informed the mayor that the "flooding was ridiculous and that you [could not] get into [her] house on a rainy day."

Whether these notices were made before or after the accident is a disputed issue; we, however, consider plaintiffs' contention in the light most favorable to them. Nonetheless, the notices were not about the formation of black ice. They were about road flooding after rainfall. Barbara did not slip on a large accumulation of frozen water; she slipped on a thin coating of black ice. It is undisputed that, at most, a light drizzle fell during or just prior to the accident. These alleged verbal complaints by Gabriel and his neighbor did not put the

Borough on notice of the condition that caused Barbara's fall. In that all other complaints were made after the accident, plaintiffs failed to satisfy the notice requirement of N.J.S.A. 59:4-2(b). The Borough was thus immune and summary judgment was properly granted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4856-17T2