NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1800-18T4

RICHARD UNDERHILL and
LINDA UNDERHILL, his wife,

      Plaintiffs-Appellants,

v.

BOROUGH OF CALDWELL,
ELEVADO SUAREZ, APOLONIO
SUAREZ, PETER PETROCHKO,
SUPER FOODTOWN OF CALDWELL,
HAJ SUPERMARKETS REALTY
HOLDINGS, LLC, and 356
BLOOMFIELD AVENUE, LLC,

      Defendants,

and

CAROL DAKIN and SUSAN FIELDS,

      Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

May 21, 2020

APPELLATE DIVISION

Submitted April 20, 2020 – Decided May 21, 2020

Before Judges Sabatino, Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law
Division, Essex County, Docket No. L-1631-17.

Piro Zinna Cifelli Paris & Genitempo, LLC, attorney for appellants (Daniel Robert Bevere, of counsel and on the briefs).

Weiner Law Group LLP, attorney for respondents (Adam Kenny, of counsel and on the briefs).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This personal injury case arises from a pedestrian's fall on black ice in a parking lot leased by private owners to the Borough of Caldwell. The injured pedestrian and his wife sued both the Borough and the private owners, alleging negligent failure to maintain the parking lot and the internal driveway connected to it in a safe condition.

The written lease between the owners and the Borough expressly delegates to the Borough the responsibility to clear the premises of ice and snow.

The Borough and the property owners moved for summary judgment. The trial court granted the Borough's motion, finding no basis for its liability. It found plaintiffs had failed to establish actual or constructive notice of a dangerous condition. Plaintiffs have not appealed that ruling as to the Borough.

The court also granted summary judgment to the property owners in a separate ruling apparently predicated on the absence of notice. Plaintiffs now appeal that ruling, arguing the property owners had a non-delegable duty under

tort law to keep the premises safe from accumulated ice and snow, or alternatively, that the language of the lease does not delegate that duty with sufficient clarity.

We affirm, albeit for a legal reason not articulated by the trial court. Based on the Supreme Court's very recent opinion in Shields v. Ramslee Motors, 240 N.J. 479 (2020), the property owners are entitled to summary judgment as a matter of law. That is because the lease explicitly delegates to the Borough the exclusive responsibility to remove snow and ice from the premises.

## I.

We summarize the pertinent facts in the record, doing so in a light most favorable to plaintiffs. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

On March 6, 2015, plaintiff Richard Underhill[1] parked his car in a municipal parking lot known as the Kaplan lot, located near the intersection of Bloomfield Avenue and Brookside Place in the Borough of Caldwell.

---

[1] Linda Underhill is a co-plaintiff in this lawsuit solely to assert per quod claims arising out of her husband Richard's accident. Hence, our references to "Underhill" and "plaintiff" mean Richard Underhill, unless the context indicates otherwise.

A-1800-18T4

Accompanied by his wife and friends, Underhill walked across the street to eat dinner at a nearby restaurant.

After the group finished dinner, Underhill and his wife crossed the street to return to their parked car. Underhill walked up the internal driveway that connected the street to the Kaplan parking lot. When he reached the top, he turned left where the driveway continued towards the parking lot. According to Underhill, as he was turning, he slipped on what he described as "black ice" that had accumulated on the blacktop pavement.

The police were notified of the incident, and Underhill was transported to a local hospital for treatment. As an alleged result of his fall, Underhill suffered injuries, the most severe of which was a fractured right hip, which later had to be replaced.

The Kaplan parking lot and the connecting driveway are owned by defendants Carol Dakin and Susan Fields. It is undisputed that Dakin and Fields leased the property to the Borough in September 1998 for a term of approximately twenty years. The Borough paid Dakin and Fields rent in the amount "equal to all land taxes for each calendar year."

A-1800-18T4

Pursuant to the terms of the lease agreement, the Borough was contractually responsible for maintenance of the lot, including snow and ice removal. The relevant provisions of the lease agreement provided:

ARTICLE 5: MAINTENANCE

The Lessee, at its sole cost and expense, shall at all times during the continuance of this Lease:

(a) Keep all its improvements, including the pavement, on the demised premises in good order, and condition and repair;

(b) Police and light the demised premises; and

(c) Keep the demised premises free of obstructions, snow, and ice.

[(Emphasis added).]

Underhill and his wife filed suit in the Law Division alleging negligence and loss of consortium. Their complaint named as defendants the Borough, Dakin, Fields, and several other individuals and businesses whom plaintiffs believed may have maintained ownership or control of the Kaplan lot at the time of Underhill's fall.

The parties do not dispute that it had been snowing intermittently during the five days leading up to Underhill's fall. It is also undisputed that the Borough engaged in extensive snow removal on all of the Borough's roadways and properties, both leased and owned, between March 1 and March 6, 2015. During

this time, nine employees of the Borough's Department of Public Works worked for more than one hundred overtime hours, plowing, removing snow, salting, and sanding on Borough properties and roads, as the winter storm actively continued during that period. The Kaplan lot was included in these snow and ice removal activities.

Plaintiffs retained a liability expert who issued a written report for the litigation. The expert asserted in his report that "there are several low spots [in the access driveway] that [caused] water to remain in puddles after precipitation events." According to the expert, these "low spots may have been present at the initial installation of the asphalt, may have developed over time . . . or may have developed from vehicular turning movements in the area." Therefore, "the failure to eliminate the depressions at the rear [of the] access driveway allowed the stormwater runoff caused by the [snow and rain] of the five days prior to the March 6, 2015 [incident] to remain and then to form into ice and remain frozen on the date of the incident." Consequently, Underhill "slipped on the ice and thus caused his injuries."

Plaintiffs learned during discovery that the parking lot was owned by Dakin and Fields and was leased to and maintained by the Borough. As a result of this information, all named defendants other than the Borough, Dakin, and

Fields were dismissed from the case, either through voluntary dismissal or summary judgment.

Represented by common counsel, the Borough, Dakin, and Fields moved for summary judgment. Following oral argument, the court granted summary judgment to these movants in two successive decisions, thereby dismissing plaintiffs' case in its entirety.

With respect to the Borough, the court found that plaintiffs' expert report, which concluded that depressions in the driveway had caused the buildup of ice, did not establish when those depressions were created or how long they had been there. Hence, plaintiffs were unable to establish that the Borough had adequate notice of the accumulation of ice in the driveway depressions. Because of the lack of notice, the court declined to reach the Borough's defense of common law immunity for snow and ice removal. See Rochinsky v. State, Dept. of Transp., 110 N.J. 399 (1988); Miehl v. Darpino, 53 N.J. 49 (1968).

Although its reasoning was less clear with respect to the property owners, the trial court appears to have likewise concluded there was no proof they had notice of the dangerous condition. The court did not rest upon the delegation clause in the lease. Accordingly, the court granted summary judgment to Dakin and Fields.

A-1800-18T4

Plaintiffs moved for reconsideration as to the court's dismissal of the property owners.  The trial court denied their motion.

Plaintiffs then filed the present appeal, confined to the property owners only.  After their merits briefs were submitted, the Supreme Court issued its decision in Shields, and we requested and considered supplemental briefs from counsel addressing that precedent.

## II.

In order to prove a claim of negligence, a plaintiff must demonstrate: "(1) a duty of care, (2) that the duty has been breached, (3) proximate causation, and (4) injury." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569 (2008)).  A plaintiff bears the burden of proving negligence, see Reichert v. Vegholm, 366 N.J. Super. 209, 213 (App. Div. 2004), and must prove that unreasonable acts or omissions by the defendant proximately caused his or her injuries, Camp v. Jiffy Lube No. 114., 309 N.J. Super. 305, 309-11 (App. Div. 1998).

Here, we focus on the necessary predicate of whether a duty of care was owed by the defendant property owners to remove ice and snow from the parking lot and internal driveway they leased to the Borough.  We need not discuss the

A-1800-18T4

other elements of negligence, because, applying <u>Shields</u>, those defendants owed no such duty to plaintiffs.

In <u>Shields</u>, the Court framed the issue before it as "whether the owner of a commercial property owes its tenant's invitee a duty to clear snow and ice from the property's driveway while the property is in the sole possession and control of the tenant." 240 N.J. at 483. The Court's six-member majority answered that query in the negative.

The plaintiff in <u>Shields</u> was delivering mail to a used car dealership when he slipped and fell on ice on the car dealerships' driveway. <u>Id.</u> at 484. The dealership was leasing the property from a landlord. The trial court granted the landlord's motion for summary judgment, finding the landlord was not responsible for removing snow and ice from the property. <u>Ibid.</u> This court reversed, holding that the lease was silent as to who was responsible for snow and ice removal from the driveway, and in any event, the landlord owed what we considered to be the same "non-delegable" duty to maintain the driveway that it owed with respect to the sidewalks abutting a leased property. <u>Ibid.</u>

The Supreme Court reversed. <u>Ibid.</u> The majority opinion first determined that the language in the parties' lease agreement implicitly delegated snow and

ice removal duties to the tenant. Id. at 488-89. The Court then found that duty could in fact be lawfully delegated. Id. at 490.

The Court found significant in Shields the fact that the defendant landlord had relinquished control of the premises to the tenant car dealership. "The landlord has vested the tenant with exclusive possession. In this case, it would be 'unfair,' . . . to hold the landlord responsible for 'a condition of disrepair over which it had relinquished access.'" 240 N.J. at 491 (quoting Vasquez v. Mansol Realty Associates, Inc., 280 N.J. Super. 234, 237 (App. Div. 1995)).

In Vasquez, the owner of an office building had leased the premises to a commercial tenant. 280 N.J. Super. at 235. The tenant agreed in the lease to maintain and clear snow and ice from the premises, including the abutting public sidewalk. Ibid. An employee of the tenant slipped and fell on the public sidewalk in front of the building due to an accumulation of snow and ice. Ibid. The trial court dismissed the employees' claims against the landlord, and this court reversed. Id. at 237. Relying on Supreme Court precedent, see Stewart v. 104 Wallace Street, Inc., 87 N.J. 146 (1981) (holding a commercial landlord has a well-established duty to maintain an abutting sidewalk in reasonably good condition); Mirza v. Filmore Corp., 92 N.J. 390 (1983) (extending that duty to include the removal of snow and ice), we ruled that the commercial landlord had

10

a non-delegable duty to remove snow and ice from the property's abutting sidewalk. In addition, we noted, "this is not a situation where the owner has vested a tenant with exclusive possession and no longer has the power of entry into the premises to make repairs." Vasquez, 280 N.J. Super. at 237.

By factual contrast in Shields, several provisions of the car dealership's lease with the landlord stated that the dealership was solely responsible for the demised property. Id. at 492. Moreover, the dealership's conduct reflected it was responsible for clearing snow and ice, as it had done so the night before the incident. Ibid. Additionally, the driveway was separated from the sidewalk by a fence, which could be closed by the dealership to restrict access to the public. Ibid. In sum, the Court found in Shields "the undisputed evidence in the record shows that the landlord did not enjoy the sort of control over the subject driveway that would give rise to a duty of care." Ibid.

The Court further analyzed in Shields whether the landlord owed the plaintiff a duty of care by considering the factors established in Hopkins v. Fox & Lazo Realtors, 132 N.J. 426 (1993). In Hopkins, the Court departed from the "traditional categorical approach to liability based on the status of the plaintiff." Shields, 240 N.J. at 492. Instead, it reasoned that "[w]hether a person owes a duty of reasonable care toward another turns on whether the imposition of such

a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins, 132 N.J. at 439. The four Hopkins factors courts should consider are "[1] the relationship of the parties, [2] the nature of the attendant risk, [3] the opportunity and ability to exercise care, and [4] the public interest in the proposed solution." Ibid.

The majority in Shields reached "the same result by application of the Hopkins factors that [it] did [by] considering control." Shields, 240 N.J. at 493. Applying the first of the Hopkins factors, the Court found the landlord had no ongoing relationship with the plaintiff. The landlord had no knowledge of who visited the property and offered no services to them. Visitors had no reason to know that the dealership was not itself the owner of the property. Ibid.

The second factor, the nature of the attended risk, favored not imposing a duty on the landlord in Shields. The majority stated, "[a]lthough hazards posed by winter weather are generally readily foreseeable, they are also transient. It would not be fair to place responsibility for removal of snow and ice on a commercial landlord that lacks control over the property." Ibid. Instead, the dealership, with control over the driveway and tools at hand to eliminate the risk, "should be held solely responsible for the safety of its invitees." Ibid.

     A-1800-18T4

The Court found the third <u>Hopkins</u> factor, "the opportunity and ability to exercise care," weighed in favor of not imposing a duty on the landlord. <u>Id.</u> at 494. The majority reasoned that it would be impractical to require the landlord to prevent the harm accompanying temporarily slippery conditions caused by weather on property that it does not control. <u>Ibid.</u> In such settings, the landlord does not maintain a presence on the property and does not have access to information about the condition of the property. <u>Ibid.</u> By contrast, the tenant kept tools for resolving the problem of removing snow and ice and regularly did so. <u>Ibid.</u>

Finally, as to the fourth <u>Hopkins</u> factor, the <u>Shields</u> majority determined that "[h]olding a landlord liable for snow and ice on demised property would not serve any public policy interest." <u>Ibid.</u> The Court presumed the plaintiff could pursue redress by potentially recovering from the dealership. <u>Ibid.</u>

In sum, the Court's majority in <u>Shields</u> concluded that an analysis of the <u>Hopkins</u> factors, as well as its "application of the classic control-based liability analysis specific to the landlord-tenant context dictates that, in fairness, the entity with control over the property is the entity that should be held responsible."

Justice Albin authored a concurrence in part. Id. at 495. He agreed that the tenant in Shields, and not the landlord, had the sole responsibility to clear the driveway of snow and ice. Ibid. Justice Albin did express his view, however, that a landlord that retains sufficient control over its property to make safety repairs should not be able to extinguish its common law duty under tort law to exercise reasonable care to guard against foreseeable dangers. Ibid. He disagreed that the tenant maintained exclusive control, as the lease terms permitted the landlord to enter the premises for the purpose of examining and making repairs. Id. at 496.

Justice Albin observed that if a landlord has retained authority to enter the premises to make safety repairs that would prevent a person from being seriously harmed, it should have a duty to do so if reasonable under the totality of the circumstances. Id. at 499. Ultimately, however, he concluded that although the landlord in Shields had the authority to enter the property to repair any dangerous conditions of which it was aware, "given the transient condition of the ice and snow in the driveway in this case, the landlord had no practicable way to know that the tenant would not clear the driveway in a timely way and therefore no reasonable opportunity to remedy the situation." Ibid.

A-1800-18T4

Plaintiffs argue this case is distinguishable from Shields for two reasons. First, they note the lease agreement in Shields explicitly stated that the dealership "shall be solely responsible for the maintenance and repair of the land and any structure placed on the premise at any time and from time to time during the lease, as if TENANT were the de facto owner of the leased premises." Id. at 485. Here, Article 5 of the lease agreement states the Borough will bear the "cost and expense" of maintenance. Plaintiffs contend this difference in verbiage is significant because the lease does not place upon the tenant the sole responsibility for performing these functions on the Borough, unlike in Shields.

We disagree. To the contrary, the language in the lease agreement in this case more clearly delegates to the tenant the duty to remove snow and ice. The lease broadly states that "[t]he Lessee . . . shall at all times during the continuance of the Lease . . . [k]eep the demised premises free of obstructions, snow and ice." The lease in Shields referred only to "maintenance," and was silent on which party bore the specific responsibility of snow and ice removal. The lease here also does not contain any provisions that permit the landlords to reenter and make repairs, unlike in Shields.

Second, plaintiffs contend this case is distinguishable from Shields because here we are dealing with a "public" driveway and parking lot, as

15

opposed to the "private" driveway in <u>Shields</u>. Therefore, it was not only anticipated, but expected, that members of the public would traverse the parking lot and driveway to use the stores and businesses in the area. Plaintiffs argue this makes the driveway in this case akin to the sidewalk in <u>Vasquez</u>, as opposed to the driveway in <u>Shields</u>, and therefore defendants, as the property owners, bore a non-delegable duty to remove snow and ice.

We reject this argument as well. The Court's majority in <u>Shields</u> made no distinction between the private or public status of the tenant. Instead, the Court held that "in fairness, the entity <u>with control</u> over the property is the entity that should be held responsible." <u>Id.</u> at 494. (Emphasis added). The Court accordingly declined to hold "the landlord responsible for property over which it had relinquished control." <u>Ibid.</u>

Here, it is not disputed that the Borough maintained control over the Kaplan lot and driveway during the term of its lease. The lease delegated to it snow and ice removal, and there is undisputed evidence in the record that the Borough had performed snow and ice removal for several days in a row leading up to Underhill's fall.

Like the driveway in <u>Shields</u>, the Kaplan lot and connecting driveway where Underhill fell were within the exclusive control of the tenant Borough.

16

The lease agreement sufficiently and expressly delegated snow and ice removal duties to it, and the Borough thereafter consistently performed those duties. See Geringer v. Hartz Mountain Development Corp., 388 N.J. Super. 392, 400-01 (App. Div. 2006) (holding, outside the context of a snow and ice removal case, that a commercial landlord owed no duty to repair or maintain interior stairway within the leased premises on which tenant's employee slipped and fell because tenant agreed to undertake all repairs in the lease agreement).

The factual circumstances here are distinguishable from those in Vasquez, in which we held a property owner had a non-delegable duty to remove snow and ice from the public sidewalk abutting its premises. 280 N.J. Super. at 237-38. The location of the present accident was not a public sidewalk. Instead, it was a parking lot and an internal driveway connected to it. We reject plaintiffs' attempt to analogize the parking lot, because it was used by the tenant as a municipal facility, to a public sidewalk that abuts a public street. The Borough's decision to use the premises for public parking did not thrust upon the landlords a non-delegable duty of care to clear snow and ice within the interior perimeter of the premises. That duty was assumed by the Borough when it entered into the lease.

A-1800-18T4

At least three of the four <u>Hopkins</u> factors lead analytically to the same result. The first factor, the relationship between the parties, does not favor the imposition of a duty on Dakin and Fields.  As in <u>Shields</u>, there was no ongoing relationship between the landlords and the tenant.  Dakin and Fields had no knowledge of who visited the property and offered no services nor derived any benefit from them.  Visitors "had no reason to know" the Borough "was not itself the owner of the property."  <u>Shields</u>, 240 N.J. at 493.

The second <u>Hopkins</u> factor, the nature of the attendant risk, focuses on "whether the risk is foreseeable, whether it can be readily defined, and whether it is fair to place the burden on preventing the harm upon the defendant." <u>Ibid.</u> (quoting <u>Davis v. Devereux Found.</u>, 209 N.J. 269, 296 (2012)).  This factor favors Dakin and Fields as well.  As the Court in <u>Shields</u> articulated, "[a]lthough hazards posed by winter weather are generally readily foreseeable, they are also transient.  It would not be fair to place responsibility for removal of snow and ice on a commercial landlord that lacks control over the property."  <u>Ibid.</u>

The third <u>Hopkins</u> factor is "the opportunity and ability to exercise care." <u>Id.</u> at 494.  This analysis is similar to the analysis of control.  <u>Ibid.</u>  The <u>Shields</u> majority commented as to this factor, "[i]t would be impractical to require the landlord here to prevent the harm accompanying temporarily slippery conditions

caused by weather on property that it does not control."  Ibid.  The landlord

"does not maintain a presence on the property and does not have access to

information about the condition of the property.  By contrast, the tenant kept

tools for resolving the problem and regularly did so."  Ibid.

As we have already noted, the Borough regularly performed snow and ice

removal on the parking lot and driveway.  Although Dakin and Fields had access

to the property by virtue of it being open to members of the public (including

them), the third Hopkins factor favors a determination that they do not owe the

duty advocated by plaintiffs.

The fourth Hopkins factor concerning the public interest can be

reasonably debated.  Because of the Borough's non-liability, including the

common law snow and ice immunity, persons who are injured on hazardous

leased premises could be left without recourse.  However, that also would have

been true if the Borough had owned and operated the premises.[2]

---

[2]  We note the limited exception in Bligen v. Jersey City Hous. Auth., 131 N.J. 124 (1993), for public entities that operate public housing projects, is not applicable here.  In his concurring opinion in Lathers v. Twp. of W. Windsor, 308 N.J. Super. 301 (App. Div. 1998), Judge Dreier questioned the wisdom of the breadth of the snow and ice immunity, but neither the Court nor the Legislature have limited the immunity nor extended the Bligen exception any further to date.

In addition, there may be public policies that favor allowing municipalities to lease properties from private owners on advantageous terms to taxpayers that do not require the payment of rent or substantial rent. If, hypothetically, the duty to clear ice and snow within the internal boundaries of the premises were held to be non-delegable, private would-be landlords might be reluctant to lease to public entities or require greater consideration. We leave that ultimate policy assessment to the Court or the Legislature.

Given this analysis, we are guided by Shields and conclude the trial court appropriately granted summary judgment to the property owners, albeit for different reasons than the motion judge expressed. See Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (applying the well-settled principle that appeals are taken from orders and not opinions, and that orders may be affirmed for reasons different from those set forth by the trial court).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1800-18T4