**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2959-18

DONELL L. PRINCE,

    Plaintiff-Appellant,

v.

CITY OF ENGLEWOOD
and PRISCILLA PAJELA,

    Defendant-Respondents.

_____

Submitted December 14, 2020 – Decided February 12, 2021

Before Judges Sabatino and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1679-17.

Donell L. Prince, appellant pro se.

Keenan & Doris, LLC, attorneys for respondent City of Englewood (Timothy O'Connor, on the brief).

Victoria M. Brown, attorney for respondent Priscilla Pajela.

PER CURIAM

Plaintiff appeals from the summary judgment orders dismissing his claims against defendants. Plaintiff alleged he slipped on snow and fell on the same day while walking on a street in Englewood and on the property owned by defendant Priscilla Pajela, his landlord. We affirm.

Claims against Englewood

On the day of these events in March 2015, as plaintiff left the rooming house where he lived, he noticed there was snow on the common walkways of the rooming house property and the adjoining public sidewalks. Because snow had been plowed from the street onto the sidewalks, plaintiff decided to walk in the street. While doing so, plaintiff stated he fell and landed on his backside and side of his body. He got up, continued on to a store to do his shopping, and walked back to the rooming house. As plaintiff was on the rooming house property, he said his foot "caught on something[] and [he] fell backward on [his] back" and struck his head.

Plaintiff alleged that Englewood, through its agents and employees, was negligent in failing to remove the snow from public sidewalks and streets, and the negligence caused him to fall and sustain injuries. Giving plaintiff all legitimate inferences as we must, Rule 4:46-2(c), we are satisfied the trial court

did not err in its grant of summary judgment to Englewood. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

It is well-established law in this state that public entities have absolute immunity for all snow removal activities. Miehl v. Darpino, 53 N.J. 49, 54 (1968). The common law "immunity was based primarily on the limitless liability that could be imposed on an entity, such as a state, county, municipality, or turnpike authority, that had the responsibility to clean up numerous streets and roads." Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 131 (1993); see also Rochinsky v. State, Dep't of Transp., 110 N.J. 399, 414-15 (1988) (holding that the enactment of the Tort Claims Act did not abrogate common law snow removal immunity); Lathers v. Twp. of West Windsor, 308 N.J. Super. 301, 305-06 (App. Div. 1998) (holding that the municipality had immunity from suit where the plaintiff slipped and fell on a patch of ice on publicly owned sidewalk); Rossi v. Borough of Haddonfield, 297 N.J. Super. 494, 499-500 (App. Div. 1997) (holding the borough enjoyed snow removal immunity where the plaintiff slipped and fell on ice in a municipal parking lot).

Here, summary judgment was properly granted in favor of Englewood. Plaintiff alleged he slipped and fell on a public street because of snow conditions. Because Englewood enjoys immunity from liability for its snow

3

removal activities, it cannot be held liable for plaintiff's alleged injuries. See Rochinsky, 110 N.J. at 413-14.

Claims against Pajela

Plaintiff alleged in his complaint that Pajela and her employees were negligent in removing snow and ice from the rooming house property and their negligence caused him to slip and fall and suffer injuries.

Plaintiff has an extensive medical history. He was involved in motor vehicle accidents in 1991 and 1995 following which he complained of pain in his neck and back. He treated with a neurologist and a neurosurgeon who prescribed pain medication. He also underwent MRI testing of his neck and back. Plaintiff has received Social Security Disability Insurance since 1997 because of his back injuries. At the time of his fall in March 2015, plaintiff was under the care of a pain management doctor and was taking Percocet to manage his chronic pain.

During his deposition, plaintiff stated: "I never said that my injuries were completely healed or anything like that. I would never say that."

Plaintiff first sought treatment for the injuries he sustained in the March 2015 fall three weeks after the accident, returning to the pain management doctor and neurologist. However, he never produced an expert report to provide

an analysis of his pre-existing injuries and conditions and any injuries that may have been caused by his fall. Nor did he present any evidence to differentiate between the two falls. There was no medical expert to present the jury with an opinion as to whether any of plaintiff's current complaints were causally related to the fall on Pajela's property.

A plaintiff has the burden to prove the elements of a negligence claim "by some competent proof." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (internal quotations and citations omitted). This includes the element of proximate cause. Plaintiff must prove any injuries he sustained were proximately caused by the fall on the rooming house property.

Because of plaintiff's complicated medical history and his ongoing treatment at the time of his fall, he required expert opinion to prove proximate cause. The medical issues presented here are beyond the ken of an average juror. 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 490 (App. Div. 1994) (holding that expert testimony is necessary where proximate causation cannot be established through common knowledge). Plaintiff had preexisting injuries and an earlier fall on the same day. Therefore, he was required to obtain

an expert to opine whether the fall at the rooming house caused a new injury.[1] Without an expert report, plaintiff could not sustain his personal injury claims pertaining to the fall.

Plaintiff made additional allegations against Pajela in her capacity as a rooming house operator. He alleged that Pajela and other unknown parties harassed and intimidated plaintiff in an attempt to force him out of the rooming house. Plaintiff alleged that he complained to Pajela in 2013 about drug use by other tenants and cracked heating pipes which caused black mold in the rooming house bathroom. After plaintiff reported his grievances to the Department of Community Affairs in 2013, an inspector evaluated the property and found it was in full compliance with the law.

Plaintiff contended, that after the inspection, Pajela retaliated against plaintiff by drilling holes into the walls and windows of his room to "blow[] drugs . . . [and] other chemical toxins into plaintiff[']s room[.]" Plaintiff alleged Pajela and her agents and employees failed to comply with the Rooming and Boarding Houses Act of 1979, N.J.S.A. 55:13B-1 to -21, and Regulations Governing Rooming and Boarding Houses, N.J.A.C. 5:27-1.1 to -14.1. In

---

[1] Plaintiff advised the trial court during oral argument that he was not pleading an aggravation of any prior injury or condition.

A-2959-18

addition, he contended that Pajela and her employees intentionally harmed him "by way of drugs" and "other chemical irritants," depriving him of a safe living environment. Plaintiff did not produce any expert opinion relating his alleged injuries to Pajela's conduct.

In granting Pajela summary judgment, the trial court stated:

> The court find[s] no genuine issue of material fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995). To the extent plaintiff argues that his personal injury claims related to drug use by other boarders at his residence caused him illness and injury, were not dismissed by prior order of the court, the court finds there is no evidence, to include an expert report, medical or otherwise, which would relate the alleged injuries to the actions complained of nor how defendant was liable therefore.
>
> The balance of [the] allegations concerning harassment in 2013 are barred by N.J.S.A. 2A:14-2. Plaintiff's amended complaint was filed in 2018. Allegations regarding incidents alleged to have occurred in 2013 or prior were adjudicated by the Bureau of Rooming and Boarding House Standards, which found [the boarding house] to be in full compliance with the Rooming and Boarding House Act and the Regulations governing Rooming and Boarding Houses.
>
> Plaintiff continues to reside at the boarding house.

Again, in viewing the facts in the light most favorable to plaintiff as the non-movant, we are satisfied he has not demonstrated a genuine issue of material fact to withstand summary judgment. R. 4:46-2. Plaintiff's complaints of

7

violations of the Rooming House Act in 2013 were investigated and dismissed by the regulating agency. Moreover, as discussed above, without an expert opinion to connect his allegations of misconduct by Pajela or the other boarders to an alleged injury or illness, plaintiff cannot support his claims.

In light of our de novo determination that the trial court's grant of summary judgment to defendants and the dismissal of all of plaintiff's claims was supported by the record, we need not address plaintiff's remaining contentions regarding the denial of other motions and cross-motions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2959-18